[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 98-6749

_____

D. C. Docket No. 96-00195-CR-N-1

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 29, 2000
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,
Cross-Appellant,

versus

DARRELL SIMPSON,

Defendant-Appellant,
Cross-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Alabama

_____

**(September 29, 2000)**

Before TJOFLAT, MARCUS and KRAVITCH, Circuit Judges.

MARCUS, Circuit Judge:

Darrell Simpson appeals his 352-month sentence resulting from his conviction on charges of conspiracy to possess with intent to distribute cocaine base, two counts of distribution of cocaine base, and two counts of carrying a firearm during a drug-trafficking crime. The Government cross-appeals arguing that the district court abused its discretion in giving Simpson a 240-month downward departure from the mandatory minimum sentencing regime embodied in

21 U.S.C. §§ 841, 851 and 18 U.S.C. § 924(c)(1) on the grounds that the mandatory minimum overrepresented the gravity of Simpson's offenses. Because we find that the district court plainly erred in determining the drug quantity attributable to Simpson and abused its discretion in departing downward from the mandated sentence, we vacate the district court's sentence and remand for re-sentencing.

## I.

The facts and procedural history are straightforward. On October 22, 1996, a federal grand jury charged Simpson with unlawful distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1) and with the use and carrying of a firearm during and in relation to a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1). On January 2, 1997, a superseding indictment expanded the charges against Simpson alleging the following drug and firearm counts: Count I - conspiracy to possess with intent to distribute cocaine base from May 15, 1996 through November 15, 1996, in violation of 21 U.S.C. §§ 841(a)(1) & 846; Count II - unlawful distribution of a controlled substance and aiding and abetting on May 17, 1996, in violation of 21 U.S.C. § 841(a)(1); Count III - unlawful distribution of a controlled substance and aiding and abetting on May 23, 1996, in violation of 21 U.S.C. § 841(a)(1); Count IV - use and carrying of a firearm during and in relation to a drug trafficking crime on May 23, 1996, in violation of 18 U.S.C. § 924(c)(1); Count V - unlawful distribution of a controlled substance on June 12, 1996, in violation of 21 U.S.C. 841(a)(1); and, finally, Count VI - use and carrying of a firearm during and in relation to a drug trafficking crime on June 12, 1996, in violation of 18 U.S.C. § 924(c)(1). The superseding indictment also named co-defendant Elmore Murphy in Counts I, II, III, and IV. Murphy entered into a plea bargain with the government and was sentenced to 51

months in prison. He subsequently testified against Simpson.

At Simpson's trial in July 1998, Murphy testified that he entered into an agreement with Simpson in late 1995 when Simpson first propositioned Murphy to sell cocaine for him and then showed Murphy how to cut up the crack cocaine for re-sale. Murphy said that beginning in late 1995 he obtained one gram of crack from Simpson every week for two to three months (for approximately 12 grams). Later he received two to three grams of crack from Simpson for approximately a two month period (for approximately 16 grams), and then at some point began receiving "quarter ounces" (5-6 grams) of cocaine from Simpson.[1] Notably, Murphy did not remember the duration or frequency with which he received the quarter ounces, however the Presentence Investigation Report ("PSI") calculated the quarter ounce distributions to total 144 grams.

Confidential informant Willie Aaron also testified at trial to two controlled buys from Simpson. First, Aaron said that on June 12, 1996, Simpson weighed about 40 grams of crack on a scale from which he purchased approximately 25 grams, and, again, on May 23, 1996, Simpson and Murphy sold him 16 grams of crack. Finally, Emmitt Knight testified that in 1992, some four years before the conspiracy at issue, Simpson sold him approximately one-half ounce of crack every three days for six months, amounting to a total of approximately 600 grams.

On July 9, 1998, the jury convicted Simpson on Counts I, III, IV, V, and VI of the superseding indictment. Prior to Simpson's trial, the Government had filed a Notice of Information under 21 U.S.C. § 851 stating that Simpson had been convicted in 1996 of a prior

---

[1] We note that in the community where these drug transactions took place purchases of an "ounce" referred to something less than 28 grams.

felony drug offense.  See R1-130.  At no time has Simpson challenged the validity of this § 851

Notice of Information.  At the sentencing hearing, the district court adopted the calculation in the

Presentence Investigation Report and specifically attributed 857.7 grams of crack cocaine to

Simpson based upon the aggregation of 45.7 grams[2] from two the controlled buys by Aaron, 172

grams from the distributions to Murphy, 40 grams from distributions to Edward Hardy,[3] and  600

grams from the sales to Knight.  The PSI concluded that Simpson's guideline range on the drug

counts was 292 to 365 months, a consecutive 60 months on the first firearm offense, and still

another consecutive 240 months on the second firearm offense.   Simpson's minimum sentence

was calculated at 592 months.  The district court agreed with the calculations of the PSI but

concluded that a 592 month sentence  was "disproportionate to the gravity of defendant's

offenses" and reduced the sentence by 240 months, thereby sentencing Simpson to a total of 352

months in prison.

On appeal, Simpson argues that the district court erred in denying his motion for

judgment of acquittal, erred in its jury charge on the two § 924(c)(1) firearm counts, and erred at

sentencing in calculating the amount of crack cocaine attributable to him.  In its cross-appeal, the

Government also challenges the sentence arguing that the district court abused its discretion in

departing downward from the applicable mandatory minimum sentence for the drug and firearms

offenses.

---

[2]  We note that this was an apparent error in the PSI Report since the amount attributable
to Simpson from the controlled buys was approximately 56 grams.  For the purposes of our
ruling on appeal, however, this error was harmless.

[3]  Edward Hardy was named as a co-defendant along with Simpson and Murphy in the
superseding indictment.  After his arrest, Hardy told federal agents that he had sold two ounces
or approximately 40 grams of crack cocaine for Simpson.

II.

We review a challenge to the sufficiency of the evidence de novo. See United States v. Futrell, 209 F.3d 1286, 1288 (11th Cir. 2000); United States v. Mattos, 74 F.3d 1197, 1199 (11th Cir. 1996). In reviewing a district court's denial of a motion for judgment of acquittal on the grounds of insufficient evidence, we must decide whether the evidence, examined in the light most favorable to the government, was sufficient to support the jury's conclusion that the defendant was guilty beyond a reasonable doubt. See United States v. Toler, 144 F.3d 1423, 1428 (11th Cir. 1998).

We review jury instructions de novo to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party. See Palmer v. Bd. of Regents of the Univ. Sys. of Ga., 208 F.3d 969, 973 (11th Cir. 2000); United States v. Chandler, 996 F.2d 1073, 1085 (11th Cir. 1993).

We review a district court's determination of the quantity of drugs used to establish a base offense level for sentencing purposes under the clearly erroneous standard. See United States v. Jackson, 115 F.3d 843, 845 (11th Cir. 1997); United States v. Mertilus, 111 F.3d 870, 873 (11th Cir. 1997). However, we consider sentence objections raised for the first time on appeal under the plain error doctrine to avoid manifest injustice. See United States v. Chisholm, 73 F.3d 304, 307 (11th Cir. 1996); United States v. Newsome, 998 F.2d 1571, 1579 (11th Cir. 1993).

Finally, we review a district court's decision to depart downward from the applicable sentencing guidelines range for abuse of discretion. See Koon v. United States, 518 U.S. 81, 98-100, 116 S.Ct. 2035, 2046-48, 135 L.Ed.2d 392 (1996); United States v. Pickering, 178 F.3d

5

1168, 1171 (11th Cir.), cert. denied, --- U.S. ---, 120 S.Ct. 433, 145 L.Ed.2d 339 (1999).

A.

First, Simpson argues that the district court erred in denying his motion for a judgment of acquittal because the evidence was insufficient to support a guilty verdict on the conspiracy charge. Simpson claims that the evidence presented at trial, even when viewed in the light most favorable to the Government, was insufficient to establish the requisite elements of either a drug conspiracy or Simpson's complicity in it. We are not persuaded.

In order to prove a conspiracy to distribute cocaine, the Government must establish beyond a reasonable doubt: 1) the existence of an agreement among two or more persons; 2) that the defendant knew of the general purpose of the agreement; and 3) that the defendant knowingly and voluntarily participated in the agreement. See United States v. Adkinson, 158 F.3d 1147, 1153 (11th Cir. 1998); United Toler, 144 F.3d at 1425-26 (citing United States v. High, 117 F.3d 464, 468 (11th Cir. 1997)); United States v. Calderon, 127 F.3d 1314, 1326 (11th Cir. 1997).

Simpson claims that confidential informant Willie Aaron testified only that Simpson was present during a drug transaction he conducted with Murphy on May 23, 1996 and that he bought drugs from Simpson, individually, on June 12, 1996. Simpson argues that Aaron's testimony is insufficient to establish an illegal agreement between Simpson and Murphy to sell drugs. Moreover, Simpson says that co-defendant Murphy's testimony regarding a conspiracy between them to sell drugs was not corroborated by the Government's videotapes of the May 23, 1996 and June 12, 1996 transactions, and he points out that Murphy specifically testified that he sold drugs independently of Simpson. Finally, Simpson observes that both Aaron and Murphy received considerable downward departures in their sentences in return for their testimony

6

against him.

The Government responds that the evidence it presented at trial was sufficient to establish beyond a reasonable doubt that Simpson and Murphy were engaged in a conspiracy to distribute cocaine between May 15, 1996 and November 15, 1996.  We agree.  Murphy's trial testimony clearly established an illegal agreement between the two that began when Simpson propositioned Murphy in late 1995 to sell cocaine for him and then showed Murphy how to cut up the crack cocaine for re-sale.  See R3-155-56, 158-59.  As Murphy testified, the agreement was straightforward:  Simpson would "front" Murphy the crack cocaine on credit; Murphy would then sell the cocaine; and the two of them would share the profits.  See R3-156-58.  The Government also points to Aaron's testimony that when he purchased cocaine from Murphy on May 23, 1996, it was Simpson who supervised and gave the "go-ahead" for the deal.  See R3-47-49.  Aaron's testimony regarding the May 23, 1996 sale was consistent with Murphy's account that he and Simpson made the  May 23, 1996 sale to Aaron together.  See R3-179.

The jury plainly credited the Government's testimony, and it is not for us on appeal to re-weigh the factfinder's credibility choices.  See United States v. Ramsdale, 61 F.3d 825, 829 n.10 (11th Cir. 1995) (noting that "[c]redibilty determinations are for the factfinder and should not ordinarily be tampered with on appeal").  We reiterate that an appellate court must view the evidence in the light most favorable to the government, drawing all reasonable inferences and credibility determinations in favor of the verdict.  See Toler, 144 F.3d at 1428.  When measured against this clear standard, we affirm the district court's denial of  Simpson's motion for judgment of acquittal on the charge of conspiracy.

B.

Second, Simpson argues that the trial court erred by "constructively" amending his indictment in its instructions to the jury. Simpson claims the court constructively amended the indictment by instructing the jury, over the objection of defense counsel, that they could convict Simpson on Counts IV and VI (the firearms counts), if they found that he "used or carried" (emphasis added) a firearm in relation to a drug trafficking offense, while the indictment actually charged that Simpson "did knowingly use and carry a firearm" (emphasis added) in relation to a drug trafficking crime. This claim is without merit.

We have explained that "[a] constructive amendment to the indictment occurs where the jury instructions so modify the elements of the offense charged that the defendant may have been convicted on a ground not alleged by the indictment." United States v. Poarch, 878 F.2d 1355, 1358 (11th Cir. 1989). A constructive amendment to the indictment is reversible error per se. Id. (citing United States v. Peel, 837 F.2d 975, 979 (11th Cir. 1988)).

Simpson argues that by changing "and" to "or" in its charge to the jury, the district court modified the elements of the offense charged, lessened the State's burden of proof, and denied him his due process rights. Both our clear precedent and logic itself reject Simpson's argument.

In Poarch we considered a case similar to the present one in which the indictment charged that the defendant had falsified material facts, concealed material facts, and covered up material facts. Under the relevant statute, 18 U.S.C. § 1001, and according to the instructions given to the jury, the government was only required to show that one of these acts was committed in order to prove guilt. See Poarch, 878 F.2d at 1358. We explained that because the indictment alleged that all three acts were committed, each of which violates the statute, the government charged more than was required by the statute. Id. Given the more strenuous terms

8

of the indictment, it was impossible that the appellant could have been convicted at trial of a ground not alleged in the indictment.  Id.  As we explained:

> Poarch was indicted for falsifying material facts, concealing material facts and covering up material facts.  Since the jury was charged that it could find Poarch guilty if he falsified, concealed, or covered up a material fact, all of which were alleged in the indictment, there could have been no constructive amendment to the indictment, and we therefore must reject Poarch's argument.

Id. at 1358; see also United States v. Cornillie, 92 F.3d 1108, 1110 (11th Cir. 1996) (holding that the district court properly instructed the jury that the defendant could be found guilty if he had used force and violence or intimidation, tracking the language of the statute under which he was charged, 18 U.S.C. § 2113(a), even though he had been accused in the indictment of having used force, violence and intimidation); United States v. Earls, 42 F.3d 1321, 1327 (10th Cir. 1994) (explaining that "'it is generally accepted procedure to use 'and' in an indictment where a statute uses the word 'or' . . . [because] [t]his assures that defendants are not convicted on information not considered by the grand jury.'  Moreover, it is 'entirely proper' for the district court to instruct the jury in the disjunctive, though the indictment is worded in the conjunctive") (quoting United States v. Daily, 921 F.2d 994, 1001 (10th Cir. 1990)).

The logic of Poarch controls this case.  Simpson's indictment charged in Counts IV and VI that he "did knowingly use and carry a firearm" in relation to a drug trafficking crime.  However, the statute requires only a showing that the defendant "uses or carries a firearm" in relation to a drug trafficking crime.  See 18 U.S.C. § 924(c)(1)(A).  Because Simpson was indicted under the more strenuous use and carry standard, he could not possibly have been convicted on a ground that was not alleged in the indictment.  Quite simply, the law is well established that where an indictment charges in the conjunctive several means of violating a

statute, a conviction may be obtained on proof of only one of the means, and accordingly the jury instruction may properly be framed in the disjunctive.

## C.

Third, Simpson argues that the district court erred in attributing 857.7 grams of crack cocaine to him for purposes of determining his base offense level. Specifically, Simpson urges that the district court mistakenly held him responsible for the amounts of cocaine that Knight testified he purchased from Simpson in 1992 (600 grams), for the quarter ounces that Murphy testified he purchased from Simpson without specifying the frequency or duration of the purchases (144 grams), and for the more specific amounts Murphy testified that he purchased from Simpson before May 15, 1996 (28 grams). Simpson concedes that he did not raise any of these objections before the district court. Therefore, we review the district court's ruling for plain error. To prevail on a showing of plain error, a defendant must prove three things: 1) an error, 2) that is plain, and 3) that affects substantial rights. See Jones v. United States, 527 U.S. 373, 389, 119 S.Ct. 2090, 2102, 144 L.Ed.2d 370 (1999); United States v. Tyndale, 209 F.3d 1292, 1295 (11th Cir. 2000). Moreover, an appellate court should exercise its discretion to correct a plain error only if it "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" Jones, 527 U.S. at 389, 119 S.Ct. at 2102 (quoting United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993)) (internal quotation marks omitted); see also United States v. Badek, 146 F.3d 1326, 1328 (11th Cir. 1998).

To begin, Simpson argues, and the Government concedes on appeal, that the district court erred in attributing 600 grams of cocaine to him based on the testimony of Emmitt Knight. Knight testified that he purchased some 600 grams of cocaine from Simpson over a 6 month

period in 1992, long before the alleged start of the conspiracy in May 1996.  Not only did this conduct occur several years prior to the charged conspiracy, it also did not involve the same alleged co-conspirators. Both parties now agree, as they must, that this activity clearly falls far outside the scope of the 1996 conspiracy for which Simpson was convicted, and therefore 600 grams of crack cocaine was improperly attributed to Simpson for sentencing purposes.  See United States v. Gomez, 164 F.3d 1354, 1356 (11th Cir. 1999) (explaining that a "defendant may be held accountable at sentencing for illegal conduct not in furtherance of the offence of conviction if that conduct was 'part of the same course of conduct or common scheme or plan' as the offense of conviction") (quoting U.S.S.G. § 1B1.3(a)(2)); United States v. Maxwell, 34 F.3d 1006, 1011 (11th Cir. 1994) (evaluating the "similarity, regularity, and temporal proximity" between the offense of conviction and the uncharged conduct to determine whether the uncharged conduct is relevant conduct for the purposes of calculating a defendant's base offense level) (internal quotation marks omitted).

Simpson also objects to the sentencing court's attribution of some 144 grams of cocaine to him based on Murphy's "vague" testimony that he received quarter ounce distributions  from Murphy without specifying either the duration or frequency of these distributions.  Murphy did say that at some point he began receiving quarter ounces of cocaine from Simpson for him to sell, but he could not remember the time period  during which these quarter ounce distributions were made or, notably, their frequency.  In light of this vague and uncertain testimony, we agree with Simpson and conclude that the district court erred in assuming that Simpson distributed quarter ounces to Murphy every week for six months.  As a result, on this limited record, the district court abused its discretion in attributing an additional 144 grams of cocaine to Simpson

11

based on this testimony.  At best, because of its ambiguity, this part of Murphy's testimony arguably supports the attribution of only a single quarter ounce, or approximately 5-6 grams, of cocaine base to Simpson.

Finally, Simpson argues that the sentencing court erred in attributing to him 28 grams of cocaine base based on distributions he allegedly made to Murphy prior to May 15, 1996.[4] Specifically, Simpson argues that Murphy's testimony concerning drug distributions by Simpson in late 1995,  and prior to May 15, 1996, fall outside the scope of the conspiracy at issue.  The Government responds that the late 1995 distributions between Simpson and Murphy should be attributed to Simpson for sentencing purposes because they involve  relevant conduct sufficiently related to the conspiracy for which Simpson was convicted.  See Gomez, 164 F.3d at 1357 (explaining that in determining the base offense level for a drug conspiracy conviction, "uncharged criminal activity outside of a charged conspiracy may be included in sentencing if the uncharged activity is sufficiently related to the conspiracy for which the defendant was convicted").

In this case, the uncharged conduct about which Murphy testified involved both the same parties as the charged conspiracy and was temporally connected to it.  As such, we cannot conclude that the district court plainly erred in attributing 28 grams of cocaine base to Simpson based on Murphy's testimony regarding distributions beginning in late 1995.  Indeed, as to the attribution of this amount we cannot say the district court erred, let alone plainly erred, or that it

_____

[4] The 28 grams combines the weekly distributions of one gram that Murphy testified he received from Simpson for two to three months (for a total of 12 grams)  plus the weekly distributions of two to three grams he testified he received from Simpson for a two month period (for a total of 16 grams).

12

resulted in a miscarriage of justice.

In sum, based on the record we conclude that the district court plainly erred in attributing 600 grams of crack to Simpson based on Knight's testimony, and in attributing 144 grams to Simpson based on Murphy's ambiguous testimony regarding his receipt of quarter ounces from Simpson, but did not plainly err in attributing 28 grams crack cocaine to Simpson based on Murphy's more detailed testimony regarding the weekly distributions made to him by Simpson beginning in late 1995. Accordingly, we conclude the district court properly should have attributed 28 grams of crack cocaine to Simpson based on his weekly distributions to Murphy in late 1995 plus 6 grams of crack cocaine to Simpson based on at least one quarter ounce distribution by Simpson to Murphy for a total of 34 grams of cocaine based on Murphy's testimony alone.

D.

Finally, in the cross-appeal, the Government argues that the district court abused its discretion in giving Simpson a 240 month downward departure on his 592 month sentence on the grounds that the sentence overrepresented the gravity of the offenses and Simpson's criminal history category overstated the seriousness of his past conduct. The district court explained the grounds for its downward departure in these terms:

> Under the Sentencing Reform Act of 1984, as strictly applied, it would appear that the defendant would be committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 592 months minimum or 665 months maximum. The minimum term consists of 292 months on each of Counts I, III and V, to be served concurrently, a term of 60 months as to Count IV, to be served consecutively to the terms on Counts I, III, and V, and a term of 240 months as to Count VI, to be served consecutively to the terms imposed on Counts I, III and V, as well as consecutively to the term imposed on Count IV.
> In the opinion of the Court, a sentence of 592 months greatly over states the offenses of defendant Simpson, and a sentence of this magnitude is

13

disproportionate to the gravity of defendant's offenses. A sentence of 292 months or 29 plus years under the guidelines would be based on reasonable estimates of quantities of drugs sold by defendant plus a criminal history which was largely based on two arrests for gambling and incidental discovery of marijuana as to one.

The Court is of the opinion and so orders that the defendant be committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 352 months.

R1-178.

The Government plainly objected at the sentencing hearing to the district court's downward departure arguing that the court could not depart downward from the mandatory sentencing regime codified by Congress in 21 U.S.C. §§ 841, 851, and 18 U.S.C. § 924(c)(1). We agree.

We emphasize that this case is governed by the mandatory minimum sentences established by Congress. This is not a case where the district court had any discretion to depart downward from the relevant sentencing guideline range. See Koon, 518 U.S. at 95-96, 116 S.Ct. at 2045. In this case, the relevant statutorily authorized mandatory minimum sentences exceeded the relevant Sentencing Guidelines range, and, therefore, took precedence over them. Moreover, the district court had no discretion to depart downward from the relevant statutory mandatory minimum sentences.

As we have observed, the district court erred in attributing 857.7 grams of cocaine to Simpson. However, even excluding the amounts erroneously attributed to Simpson (namely 600 grams sold to Knight and 144 grams distributed to Murphy in quarter ounces), Simpson is still responsible for significantly more than 50 grams of cocaine base.[5]

---

[5] As stated earlier, the PSI erroneously attributed 45.7 grams of cocaine to Simpson based on the controlled buys to Aaron rather than the correct 56 grams. In addition, although the

14

Section 841(b) provides:

> [A]ny person who violates subsection (a) of this section shall be sentenced as follows: (1)(A) In the case of a violation of subsection (a) of this section involving – . . . (iii) 50 grams or more of a mixture or substance described in clause (ii) which contains cocaine base; . . . such person shall be sentenced to a term of imprisonment which may not be less than 10 years . . . . <u>If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment</u> . . . . (emphasis added)

Prior to trial, the Government filed a Notice of Information under 21 U.S.C. § 851 stating that Simpson had a prior conviction for a felony drug offense. Simpson did not challenge, contradict, or respond in any way to the § 851 enhancement doubling the mandatory sentence for his drug charges. Therefore, under 21 U.S.C. § 841, the district court was required to sentence Simpson to a statutory minimum term of 20 years or 240 months on his drug convictions.[6]

Under the Sentencing Guidelines, Simpson's base offense level for the distribution of more than 50 grams but less than 150 grams of cocaine base is 32. See U.S.S.G. § 2D1.1. Simpson received a two level enhancement pursuant to U.S.S.G. § 3B1.1(c) for being an organizer, leader, manager, or supervisor of the criminal activity. Given his base offense level of 34, and a criminal history category of III, Simpson falls within a Sentencing Guidelines range of 188-235 months for his drug convictions. But the Sentencing Guidelines make clear that where

---

district court erred in attributing 144 grams of cocaine base to Simpson based on Murphy's vague testimony about quarter ounce distributions to him, at least 6 grams of cocaine can properly be attributed to Simpson based on this testimony. Therefore, based on the district court's findings, Simpson should be held accountable for 56 grams based on the two controlled buys by Aaron, plus 34 grams based on the distributions to Murphy, plus 40 grams based on the distribution to Hardy for a total of approximately 130 grams.

    [6] Counts I, III, and V are grouped offenses whose sentences can run concurrently. See U.S.S.G. § 3D1.2(d)

a guideline range falls entirely below a mandatory minimum sentence, the court must follow the statutory minimum.  See U.S.S.G. § 5G1.1[7]; see also United States v. Ortega-Torres, 174 F.3d 1199, 1201 n.2 (11th Cir.) (emphasizing that the statute controls in the event of a conflict between the guideline and the statute), cert. denied, --- U.S. ---, 120 S.Ct. 259, 145 L.Ed.2d 217 (1999); United States v. Eggersdorf, 126 F.3d 1318, 1320 (11th Cir. 1997) (same), cert. denied, 523 U.S. 1013, 118 S.Ct. 1204, 140 L.Ed.2d 332 (1998).  Therefore, because the Sentencing Guidelines range falls entirely below the statutorily imposed mandatory minimum sentence for Simpson's drug offenses, the district court was obliged to impose the mandatory minimum 240 months for these drug convictions.

As for Simpson's two firearm convictions, 18 U.S.C. § 924(c)(1) provided for a sentence of five years on a first conviction, and a sentence of 20 years for a "second or subsequent conviction under this subsection."[8]  Moreover, § 924(c)(1) expressly provided  that the term of

_____

[7] U.S.S.G. § 5G1.1 states:
Sentencing on a Single Count of Conviction
.  .  .
(b)      Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.
(c)      In any other case, the sentence may be imposed at any point within the applicable guideline range, provided that the sentence --
      (1)      is not greater than the statutorily authorized maximum sentence, and
      (2)      is not less than any statutorily required minimum sentence.

[8] On November 13, 1998, 18 U.S.C. § 924(c) was amended and the penalty for a second or subsequent conviction was increased to 25 years.  At the time of Simpson's offense and sentencing, however, the relevant portion of § 924(c)(1) read: "Whoever, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, shall in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years . . . .  In the case of his second or subsequent conviction under this subsection such person shall be sentenced to imprisonment for twenty years . . . ."

16

imprisonment imposed under this subsection shall not "run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried." See also U.S.S.G. 2K2.4 (stating that "if the defendant . . . was convicted under . . . 924(c) . . . the term of imprisonment is that required by statute); United States v. Cespedes, 151 F.3d 1329, 1333 (11th Cir. 1998) (holding that the sentence under section 924(c) must be served consecutively with the sentences for defendant's other offenses); Bazemore v. United States, 138 F.3d 947, 948 (11th Cir. 1998) (same); United States v. Siegel, 102 F.3d 477, 481-82 (11th Cir. 1996)(same). Therefore, on the two firearm convictions, Simpson must serve a mandatory term of imprisonment of 300 months to run consecutive to the sentence imposed for his other offenses.

There are only two circumstances in which a court can depart downward from a statutorily authorized mandatory minimum sentence. Either the Government must file a motion to recognize the defendant's "substantial assistance" in the investigation or prosecution of another person, see 18 U.S.C. § 3553(e), or, the defendant must fall within the provisions of the "safety valve" embodied in 18 U.S.C. § 3553(f). Neither circumstance is applicable here.

According to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1, a court may depart downward from a statutory mandatory minimum if the government files a motion stating that the defendant has provided substantial assistance. The Government did not file a substantial assistance motion in this case, and therefore the district court could not depart downward from the statutory minimum sentences on this ground.

Under the safety-valve provision of 18 U.S.C. § 3553(f), a sentencing court can depart downward from a statutory minimum sentence for an offense arising under 21 U.S.C. §§ 841,

17

844, 846, 960 or 963 if the defendant meets each of five criteria: 1) the defendant does not have more than 1 criminal history point; 2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense; 3) the offense did not result in death or serious bodily injury to any person; 4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, and was not engaged in a continuing criminal enterprise; and 5) not later than the time of the sentencing hearing, the defendant has truthfully provided the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct. See 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. But Simpson could not qualify for a downward departure under the safety-valve provision because he had four criminal history points, possessed a firearm during two of his drug offenses, and was found to be an organizer, leader, manager, or supervisor of the criminal activity.

On this record, the district court was bound to impose the statutorily authorized mandatory minimum sentences for Simpson's crimes, namely 240 months for the drug convictions plus 300 months for the two firearms convictions for a total mandatory minimum sentence of 540 months. The district court had no discretion in this case to depart downward from these congressionally created explicit mandatory minimum sentences.

We conclude, therefore, that the district court erred in attributing 857.7 grams of cocaine to Simpson, and abused its discretion in sentencing Simpson to 352 months in prison. Accordingly, although we affirm the conviction, we are required to vacate the district court's sentencing order and remand for re-sentencing consistent with this opinion.

VACATED AND REMANDED.