[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-10693
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 31, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-60035-CR-CMA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES JOHN SMITH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 31, 2005)

Before BIRCH, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Charles John Smith appeals through counsel his ten-year sentence for possession with intent to distribute five grams or more of a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(b)(1)(B), 851. Smith argues on appeal that the district court clearly erred in calculating the amount of cocaine base attributable to him. For the reasons set forth more fully below, we affirm.

A federal grand jury returned an indictment, charging Smith with the above-referenced drug offense. The government, thereafter, filed a "second offender information," advising Smith that it intended to seek enhancement of his sentence, pursuant to 21 U.S.C. §§ 841 and 851, based on Smith's 2003 state felony conviction for possession of cocaine. Under this enhancement, Smith's mandatory minimum statutory sentence was ten years' imprisonment. See 21 U.S.C. § 841(b)(1)(B)(iii) (setting a mandatory minimum sentence of ten years' imprisonment for a defendant who commits a violation involving five grams or more of cocaine base if the defendant commits this violation after a prior conviction for a felony drug offense has become final). Pursuant to a plea agreement, Smith pled guilty as charged.

Prior to sentencing, a probation officer prepared a presentence investigation report ("PSI"), recommending that Smith be held accountable for 5.3 grams of

cocaine base—the net weight of cocaine base that Smith had sold to a confidential source ("CS") during a monitored drug transaction. The probation officer then calculated Smith's base offense level as 26, pursuant to U.S.S.G. § 2D.1(c)(7) (guideline for at least 5, but less than 20, grams of cocaine base), and recommended that this offense level be adjusted downward three levels, pursuant to U.S.S.G. § 3E1.1, based on Smith's acceptance of responsibility. With a total offense level of 23 and a criminal history category of V, Smith's resulting guideline range was 84 to 105 months' imprisonment. Nevertheless, because Smith's mandatory minimum sentence was ten years' imprisonment, pursuant to 21 U.S.C. §§ 841(b)(1)(B) and 851, this higher statutory sentence became his guideline sentence, pursuant to U.S.S.G. § 5G1.1(b).[1]

Also prior to sentencing, the government recommended that Smith be allowed to withdraw his plea because both his plea agreement, and the court during the plea colloquy, misadvised Smith that his mandatory minimum statutory sentence was five years' imprisonment. The government explained that Smith's prior felony conviction raised his mandatory minimum statutory sentence to ten year's imprisonment. The district court then granted Smith's request for it to

---

[1] Under § 5G1.1(b), "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline range." See U.S.S.G. § 5G1.1(b).

appoint new counsel, who obtained a court order permitting the defense to have an independent chemist weigh the cocaine base. Based on the findings of this independent chemist, Terry Hall, Smith objected to the PSI's calculation of drug amount and argued that he, instead, should be held accountable for between three to four grams of cocaine base, which would have lowered his base offense level by two levels.

On February 3, 2005, the court permitted Smith to withdraw his guilty plea. After the government filed a superseding information, Smith waived indictment, plead guilty to the drug offense, and waived his right to a jury trial. In doing so, Smith stipulated that, on July 15, 2003, via an audio-recorded telephone call, he arranged and agreed to sell cocaine base to a CS, who was working on behalf of the DEA and, later that same day, he sold cocaine base to the CS for $200. Smith, however, reserved his right to have the court determine the issue of drug amount during a bench trial.

The government then introduced the testimony of Patricia Burn, a forensic chemist with the Drug Enforcement Administration ("DEA"), whom Smith stipulated was an expert in analyzing controlled drug substances. Burn stated that, although the DEA laboratory received the controlled substance at issue in the instant case on July 18, 2003, Burn did not receive and test it until August 8, 2003.

4

Using a Metler digital scale, which had an accuracy of plus or minus 1.0 gram, and which was calibrated last on July 15, 2003, Burn determined that the net weight of the substance was 5.3 grams.[2]  After removing approximately 1.1 grams of this substance for analysis, and, therefore, leaving behind 4.2 grams of the substance, Burn also determined that this substance was cocaine base.

In addition, Burn testified that she accompanied Hall, the defense's chemist, when Hall subsequently weighed and tested the remaining substance.  Conceding that Hall found that only 3.5 grams of cocaine base remained, Burn explained that this difference in weight was not surprising and could be explained by the facts that (1) drying and loss of water normally occurs in water-based samples, such as cocaine base; (2) the plastic bag in which the substance was contained kept moisture inside, and (3) her testing was done in August—a wet month in Florida.

Smith, in turn, introduced the testimony of Hall, the Laboratory Director of the Forensic Toxicology Testing Services in Miami, Florida, whom the court accepted as an expert in forensic analysis.  Hall stated that he weighed the substance at issue in January 2005, with an AccuLab scale that he calibrated himself immediately prior to the testing, and that he attempted to remove all of the substance from the plastic bag in which it was contained.  Hall also stated that the

---

[2] On cross-examination, Burn conceded that she had no records with her to corroborate her testimony on when the scale that she had used had been calibrated and checked.

5

amount of substance remaining after Burn's analysis only weighed 3.54 grams. Moreover, on questioning by the district court, Hall conceded that it was possible to dehydrate cocaine base through drying agents, but that this procedure would not reveal the weight of the substance at the time it was confiscated.

The government argued that, unless the court concluded that Burn's scale was malfunctioning or her methodology was incorrect, the court should conclude that Smith was responsible for more than 5.0 grams of cocaine base. The government also asserted that Burn's analysis was the only analysis completed at the time of the offense, and that the law allows for the inclusion of water in a mixture containing cocaine base. Smith responded that the loss of water was significant, and that the court should resolve any reasonable doubt in his favor.

The court found that nothing in the evidence suggested that Burn's analysis or conclusions were incorrect. The court also discussed that Hall's different finding as to drug amount was attributable to a "drying out process" during the time period between August 2003, when Burn weighed the substance, and January 2005, when Hall completed his testing. The court, thus, concluded as follows:

> I don't think there is any doubt, based on the evidence presented, that at the time of the offense . . . the weight of the mixture and substance exceeded 5 grams. Over time it has dried out so that now it's a more favorable weight, but it's not the appropriate inquiry for the Court. It doesn't tell me what the weight of the substance was at the time that it was confiscated and, certainly, and I would agree with [the

prosecutor], what the statute defines is a mixture and substance containing cocaine, and the weight goes to that mixture and substance, not just to that portion of it which contains the actual cocaine base and, therefore, I agree with the [g]overnment's assessment and they have established, to my satisfaction, that the weight here exceeded 5 grams.

Because the government had filed its § 851 information and the offense involved 5 or more grams of cocaine base, the court determined that Smith's mandatory minimum sentence was 120 months' imprisonment. The court sentenced Smith to 120 months' imprisonment, 8 years' supervised release, and a $3,000 fine.

As discussed above, Smith argues on appeal that the district court clearly erred in calculating the quantity of drugs for which he should be held accountable at sentencing. Smith asserts in support that (1) Burn did not weigh the cocaine base until approximately three weeks after the government seized it from Smith; (2) this testing occurred during a month that was "extremely wet," and, thus, did not fairly yield the actual weight of the substance; and (3) Hall subsequently found that the substance weighed less than five grams. Smith concludes, as such, that the government failed to prove by the preponderance of the evidence that he was responsible for more than five grams of cocaine base.[3]

_____

[3] Smith has waived by not arguing on appeal that his sentence was in violation of Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), or United States v. Booker, 543 U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). See United States v. Dockery, 401 F.3d 1261, 1262-63 (11th Cir. 2005) (holding that this Court's "well established rule that issues and contentions not timely raised in the briefs are deemed abandoned" is applicable to

Also as discussed above, § 841(b) provides for a mandatory minimum statutory sentence of ten years' imprisonment if the defendant commits a violation involving five grams or more of a mixture of substance containing a detectable amount of cocaine base, and if the person commits such a violation after a prior conviction for a felony drug offense has become final. See 21 U.S.C. § 841(b)(1)(B)(iii). Prior to trial, the government filed a "second offender information," pursuant to 21 U.S.C. § 851, notifying Smith that it intended to rely on his prior felony conviction for a drug offense. Smith did not challenge this information. Thus, as the district court concluded, if Smith's drug offense involved five grams or more of a mixture of substance containing a detectable amount of cocaine base, he was subject to a mandatory minimum statutory sentence of ten years' imprisonment, regardless of his sentencing guideline range. (See R2 at 43-45); see also United States v. Simpson, 228 F.3d 1294, 1303-04 (11th Cir. 2000) (citing U.S.S.G. § 5G1.1(b)).

---

claims based on Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its progeny). Regardless, Smith waived his right to a jury trial on the issue of drug amount. (See R1-65; R2 at 14). More importantly, we have concluded that Blakely "does not undermine the validity of minimum mandatory sentences, at least not where the enhanced minimum does not exceed the non-enhanced maximum." See Spero v. United States, 375 F.3d 1285, 1286 (11th Cir. 2004), cert. denied, 125 S.Ct. 1099 (2005), and cert. denied, 125 S.Ct. 1345 (2005). We explained in Spero that "Blakely, like Apprendi, explicitly distinguished minimum mandatory sentences from the circumstances involved in those cases and indicated that McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), is still good law." See Spero, 375 F.3d at 1286.

When a defendant objects to a factual finding that the district court used in calculating his sentence, such as drug amount, the government bears the burden of establishing the disputed fact by a preponderance of the evidence. United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir.), cert. denied, 125 S.Ct. 2935 (2005). Post-Booker, we continue to review a district court's factual determination of the quantity of drugs properly attributable to a defendant for clear error. See United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005) (reviewing factual findings for minimal-planning enhancement). We cannot find clear error unless we are "left with a definite and firm conviction that a mistake has been committed." Id. at 1177 (quotation omitted).

However, when a defendant raises an argument for the first time on appeal, our review only is for plain error. United States v. Peters, 403 F.3d 1263, 1270 (11th Cir. 2005). "Under plain error review, which is authorized by Fed.R.Crim.P. 52(b), federal appellate courts have only a limited power to correct errors that were forfeited because they were not timely raised in the district court." Id. at 1270-71 (internal quotations and marks omitted). Thus, we

> may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights . . .. Even then, we will exercise our discretion to rectify the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings.

9

Id. at 1271 (internal quotations and marks omitted).

To the extent Smith is arguing that the court erred in relying on Burn's analysis of the cocaine base because Burn did not weigh this substance until approximately three weeks after the government seized it, Smith failed to raise this argument in the district court. Thus, our review of it is only for plain error. See Peters, 403 F.3d at 1270. An error cannot meet the "plain" requirement of this rule if it is not "clear under current law." See United States v. Aguillard, 217 F.3d 1319, 1321 (11th Cir. 2000) (quotation omitted). Because Smith has not identified caselaw clearly supporting this argument, no plain error occurred.

Furthermore, to the extent Smith is asserting that clear error occurred because Hall found that the remaining cocaine base weighed 3.5 grams, instead of 4.2 grams as Burn testified, Burn weighed the substance in August 2003, within a month of the drugs being seized, while Hall did not weigh the substance until January 2005. Burn explained that this difference in weight, after more than one year had passed, was not surprising and could be attributed to the facts that (1) cocaine base normally dehydrates over time; (2) the plastic bag in which the substance was originally contained kept moisture inside; and (3) Burn's testing was done in August, which normally is a wet month in Florida. Moreover, both Burn and Hall agreed that dehydration of cocaine base can affect its weight. This

discrepancy in weights, therefore, did not rebut the government's evidence on the weight of the substance at the time it was seized.

In addition, although Burn conceded that she had no records with her to corroborate her testimony on when the scale that she had used had been calibrated and checked, and sentencing cannot be based on calculations of drug quantities that are "merely speculative," see United States v. Zapata, 139 F.3d 1355, 1359 (11th Cir. 1998) (rejecting a finding of drug quantity involving "rounding up"), Smith did not challenge in the district court, and has not argued on appeal, either that Burn's methodology was improper, or that the scale she used in concluding that the cocaine base weighed 5.3 grams was faulty or, otherwise, unreliable. Smith also has not argued that the excess water was non-usable or a non-consumable component of the cocaine base and, thus, should not have been included in weighing the mixture containing the cocaine base. See United States v. Jackson, 115 F.3d 843, 846-47 (11th Cir. 1997) (explaining that "[t]he entire weight of drug mixtures which are usable in the chain of distribution should be considered in determining a defendant's sentence").[4]

Accordingly, we conclude that the district court did not clearly err in

_____

[4] In comparison, we concluded in United States v. Smith, 51 F.3d 980 (11th Cir. 1995), that the district court improperly approximated the weight of marijuana for which the defendant was responsible because the wet marijuana had a moisture content that rendered it unsuitable for consumption without drying. See id. at 981-82.

11

determining drug amount.  We, therefore, affirm.

**AFFIRMED.**