[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 29, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-12180
Non-Argument Calendar

_____

D. C. Docket No. 03-00140-CR-T-26-TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANCO HERRERA-AGUILAR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(September 29, 2006)**

Before DUBINA, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Franco Herrera-Aguilar appeals the 292-month sentence he received after

pleading guilty to conspiring to possess with intent to distribute 500 grams or more

of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A)(viii). On appeal, Herrera-Aguilar argues that, in calculating his offense level, the district court erred by assessing a three-level managerial-role enhancement under U.S.S.G. § 3B1.1, and in calculating the amount of methamphetamine for which he was accountable under U.S.S.G. § 2D1.1(c). Herrera-Aguilar also asserts that his sentence was unreasonable, particularly when compared to the sentences of his co-defendants. After careful review, we affirm.

We review the district court's interpretation of the Guidelines de novo and its factual findings for clear error. United States v. Jordi, 418 F.3d 1212, 1214 (11th Cir. 2005). We review the district court's determination of a defendant's role in the offense for clear error. United States v. Yates, 990 F.2d 1179, 1182 (11th Cir. 1993). We likewise review for clear error a determination of the amount of drugs attributable to a defendant in calculating his base offense level. United States v. Simpson, 228 F.3d 1294, 1298 (11th Cir. 2000).

Pursuant to the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), we review a district court's sentence, imposed after consulting the Guidelines and considering the factors set forth at § 3553(a), for reasonableness. 543 U.S. at 264-65; United States v. Williams, 435 F.3d 1350, 1353 (11th Cir. 2006) ("Under Booker, we review a defendant's ultimate sentence for

2

reasonableness."). The reasonableness review is "deferential" and focuses on whether the sentence imposed fails to achieve the purposes of sentencing as stated in § 3553(a). United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). Moreover, we recognize that a range of reasonable sentences exists from which the district court may choose. Id. "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)." Id.

The relevant facts are these. On April 10, 2003, Herrera-Aguilar was indicted, along with co-defendant Sigifredo Saucedo, for conspiring to possess with intent to distribute 500 grams or more of methamphetamine (Count One), in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A)(viii), and, along with co-defendant Luis Arana Aguilar, for conspiring to possess with intent to distribute 500 grams or more of cocaine (Count Two), in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B)(ii). Herrera-Aguilar pled guilty to Count One, after which the district court dismissed Count Two, pursuant to the government's motion. Herrera-Aguilar then proceeded to sentencing.

According to the presentence investigation report ("PSI"), beginning in at least April of 1999, Herrera-Aguilar recruited and paid numerous couriers to transport methamphetamine and other drugs from California to Florida. The PSI

3

listed the two co-defendants with whom Herrera-Aguilar had been indicted, as well as other defendants related to the conspiracies with which Herrera-Aguilar was charged, as receiving the following sentences: (1) Luis Arana Aguilar, 37 months' imprisonment; (2) Sigifredo Saucedo, 46 months' imprisonment; (3) Ramon Luna-Magana, 262 months' imprisonment; (4) Andres Agustin Lujano, 60 months' imprisonment; (5) Alejando Benitez, 294 months' imprisonment; (6) Francisco Patino Vega, 204 months' imprisonment; (7) Jesus Hernandez, 168 months' imprisonment; and (8) Fragedis Almada-Escobar, who remained a fugitive.

The PSI detailed the arrests of some of Herrera-Aguilar's co-conspirators, many of whom identified Herrera-Aguilar as their supplier. In 2000, Saucedo was stopped in Oklahoma for a traffic violation, and 6.1 kilograms of methamphetamine were found in his vehicle. After his arrest, Saucedo said that he was transporting the methamphetamine for Herrera-Aguilar. In June 2001, law enforcement stopped Lujano, who was found to be transporting 13.6 kilograms of methamphetamine from Texas to Florida and identified Herrera-Aguilar as his supplier. In July or August 2001, another 9.07 kilograms of methamphetamine was seized from Luna-Magana, who also identified Herrera-Aguilar as his supplier. Finally, in March 2003, during the search of a residence that Saucedo maintained for Herrera-Aguilar, 283.5 grams of methamphetamine were discovered, among

4

other controlled substances. Herrera-Aguilar fled the residence when the police officers arrived. In April 2004, Herrera-Aguilar was arrested in Georgia for traffic violations after leading police officers in a high-speed chase on an interstate highway and through an apartment complex.

After determining that over 29.05 kilograms of methamphetamine were seized from Herrera-Aguilar's co-conspirators, the PSI calculated Herrera-Aguilar's base offense level as 38, pursuant to U.S.S.G. § 2D1.1(c), which applies to offenses involving 15 kilograms or more of methamphetamine. The PSI assessed a four-level leadership-role enhancement, pursuant to U.S.S.G. § 3B1.1(a), and a two-level enhancement, pursuant to U.S.S.G. § 3C1.2, for obstructing justice because Herrera-Aguilar recklessly created a risk of death or injury to another during flight. Herrera-Aguilar also received a three-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b). With a total offense level of 41 and a criminal history category II, Herrera-Aguilar faced 360 months' to a life term of imprisonment, under the Guidelines range. The mandatory minimum term for his offense was ten years in prison. See 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii).

Before the sentencing hearing, Herrera-Aguilar filed written objections to being held accountable for 29.05 kilograms of methamphetamine and to receiving

a leadership-role enhancement. He also argued that he should have received a mitigating-role reduction. The district court heard argument on these objections at the beginning of the hearing. The government then called Glen James, a police officer with the City of Lakeland Police Department who was assigned as a task force officer with the Drug Enforcement Agency ("DEA").

Officer James testified that he was assigned to investigate Herrera-Aguilar in June 2001. James described the stop of Lujano that month. This stop yielded the discovery of 24.7 kilograms of methamphetamine, which Lujano said was supplied by Herrera-Aguilar, and during a subsequent controlled delivery of this methamphetamine to Benitez's house, another 19.7 pounds of methamphetamine was discovered. Law enforcement subsequently recorded a conversation, which took place in a police car between Lujano and co-conspirators Vega and Almada-Escobar after they were arrested in conjunction with the methamphetamine discovered in Benitez's house. During this conversation, the conspirators discussed the need to contact Herrera-Aguilar.

Officer James also described the arrests of co-conspirators Luna-Magana, Saucedo, and Cabrera-Balbuena, all of whom identified Herrera-Aguilar as their supplier. The methamphetamine involved in these arrests exceeded 46 pounds. And Herrera-Aguilar's fingerprints were lifted off of the packaging of the

methamphetamine seized from Cabrera-Balbuena and the bumper of the car he was driving.[1]

The district court overruled Herrera-Aguilar's objections to the PSI's calculations, except for adjusting the leadership-role enhancement from the four levels recommended in the PSI to three levels. The district court then found that Herrera-Aguilar's criminal history warranted a category I, rather than a category II. After these adjustments, Herrera-Aguilar's Guidelines imprisonment range was 292 to 365 months' imprisonment. Herrera-Aguilar requested a sentence below, or at the low end of, the range, arguing that such a sentence would sufficiently deter future crime and that he was a "good family man" who did not have a significant prior record. The government responded that 360 months would be an appropriate sentence because of the large amount of methamphetamine involved. Before

---

[1]We are unpersuaded by Herrera-Aguilar's argument that James's testimony was inadmissible hearsay because it was based primarily on cooperating co-conspirators' statements. The district court may use reliable hearsay at sentencing. United States v. Cantellano, 430 F.3d 1142, 1146 (11th Cir. 2005), cert. denied, 126 S. Ct. 1604 (2006). Factors that lend reliability include whether witnesses' statements are consistent and whether the defendant has had the opportunity to rebut the evidence or otherwise cast doubt upon its credibility. United States v. Gordon, 231 F.3d 750, 760 ( 11th Cir. 2000); United States v. Castellanos, 904 F.2d 1490, 1496 (11th Cir.1990). A witness's "cooperation with the Government, without more, does not prohibit the judge from relying on the statement." United States v. Riley, 142 F.3d 1254, 1258 (11th Cir. 1998) (footnote omitted). Because cooperation alone is insufficient to suggest inadmissibility, and we find that James's testimony included the necessary indicia of reliability -- the co-conspirators' statements consistently indicated that Herrera-Aguilar was the supplier and directed the transportation of the methamphetamine, and Herrera-Aguilar extensively cross-examined James and established that some of his sources received lesser sentences in exchange for their cooperation -- the district court did not err by considering it at sentencing.

imposing sentence, the district court reviewed co-conspirators' sentences imposed by another judge, noting that Luna-Magana was sentenced to 262 months' imprisonment, Benitez was sentenced to 294 months' imprisonment and did not cooperate with the government, and Vega received 204 months' imprisonment and did not cooperate with the government. The district court also noted that other co-conspirators who did cooperate were sentenced to "significantly less time" in prison. The district court then sentenced Herrera-Aguilar to 292 months' imprisonment, to be followed by 5 years of supervisory release, stating that the sentence was consistent with those imposed on Herrera-Aguilar's co-conspirators by another judge. This appeal followed.

First, Herrera-Aguilar challenges the district court's calculation of the advisory Guidelines range, asserting that the court improperly assessed a managerial-role enhancement and miscalculated the amount of methamphetamine involved. Pursuant to U.S.S.G. § 3B1.1(b), the district court may apply a three-level enhancement if the defendant was a "manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants." See United States Sentencing Commission, Guidelines Manual, § 3B1.1(b) (Nov. 2004). To warrant application of the enhancement, the defendant must have exerted "some degree of control, influence, or leadership" over at least one other

8

participant. See Yates, 990 F.2d at 1182; U.S.S.G. § 3B1.1, comment. (n. 2). Here, we readily conclude the government met its burden to prove Herrera-Aguilar's managerial role by a preponderance of the evidence. Yates, 990 F.2d at 1182 (holding that government must prove defendant's role by a preponderance of the evidence). The government's evidence established that at least five people were involved in the conspiracy, and that Herrera-Aguilar exercised authority over at least one of these people by paying and directing at least one co-defendant to transport methamphetamine and to maintain a methamphetamine-storage house.

Likewise, the district court did not reversibly err in its calculation of the drug amount. The Guidelines require a district court to hold a defendant accountable for all drugs foreseeably distributed as part of the common scheme for which he was convicted. United States v. Hansley, 54 F.3d 709, 713-14 (11th Cir. 1995) (citing U.S.S.G. §§ 2D1.1 and 1B1.3). The district court is required to make individualized findings on the scope of criminal activity undertaken by the defendant and then determine the drug quantities reasonably foreseeable in connection with that level of participation. Id. Where that drug quantity is 15 kilograms or more of methamphetamine, the defendant receives a base offense level 38. U.S.S.G. § 2D1.1(c)(1).[2] From our review, the government presented

---

[2]We are unpersuaded by Herrera-Aguilar's argument concerning a misstatement by the district court at the sentencing hearing. At one point during the hearing, the district court incorrectly

ample evidence that Herrera-Aguilar's participation in the conspiracy was extensive, and that he reasonably could have foreseen that the 29.05 kilograms of methamphetamine seized from his co-conspirators might be distributed. Accordingly, the district court did not err in calculating the advisory Guidelines range on either of the rounds Herrera-Aguilar raises on appeal.

As for Herrera-Aguilar's challenge to the reasonableness of his sentence, the district court considered the following, which we consider pertinent to the 18 U.S.C. § 3553(a) factors: (1) the sentences imposed by another judge on similarly situated co-conspirators, see 18 U.S.C. § 3553(a)(6) ("the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"); (2) Herrera-Aguilar's status as a "good family man" with only a minor prior record, id. at § 3553(a)(1) (enumerating "the history and characteristics of the defendant"); (3) "the seriousness of the offense," id. at § 3553(a)(2)(A); (4) the need to protect the public, id. at § 3553(a)(2)(C) ("the need for the sentence imposed . . . to protect the public from further crimes of

---

stated that Herrera-Aguilar was responsible for 59.05 kilograms of methamphetamine, rather than the 29.05 kilograms seized from his co-conspirators and discussed in the PSI. Herrera-Aguilar did not object to this misstatement below, and accordingly, we review it for only plain error. United States v. Simpson, 228 F.3d 1294, 1298 (11th Cir. 2000). Because Herrera-Aguilar cannot show an affect on his substantial rights, the third prong of his burden under the plain error test -- that is, under § 2D1.1(c)(1), the Guidelines imprisonment range would be the same using either of these amounts -- there is no plain error.

the defendant"); and (5) the parties' arguments and the PSI's calculations, which outlined "the kinds of sentences available," id. at § 3553(a)(3). After considering all of these factors, the district court imposed a sentence it concluded was consistent with those sentences given to similarly situated co-conspirators and within the Guidelines range. On this record, we readily conclude that Herrera-Aguilar's sentence was reasonable.

In sum, the district court correctly calculated the Guidelines range, considered the Guidelines advisory, and adequately took into account the factors in 18 U.S.C. § 3553(a), and we therefore affirm.

**AFFIRMED.**