United States Court of Appeals,

Eleventh Circuit.

No. 96-9455.

UNITED STATES of America, Plaintiff-Appellee,

v.

Silvio GOMEZ, Defendant-Appellant.

Jan. 14, 1999.

Appeal from the United States District Court for the Southern District of Georgia. (No. CR496-76-WTM), William T. Moore, Judge.

Before TJOFLAT and HULL, Circuit Judges, and KRAVITCH, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

The appellant, Silvio Gomez, was convicted by a jury on one count of conspiracy to possess with intent to distribute heroin, cocaine, and crack cocaine, in violation of 21 U.S.C. § 846. The conspiracy operated out of the Sparkling City Car Wash in Savannah, Georgia. Gomez, a resident of Miami, was alleged to be one of the operation's suppliers. Government witnesses who were involved in the operation testified that Gomez sold them powdered cocaine on repeated occasions over the course of a two-year period; they in turn sold the cocaine (in powdered or "crack" form) out of the Sparkling City Car Wash.[1] Each sale by Gomez involved at least one-quarter kilogram of cocaine. Another Government witness, Leanor Leal, was not involved in the Savannah operation but testified that, near the time Gomez allegedly began supplying drugs to that operation, he sold two kilograms of cocaine to her boyfriend, Danny Saldana.

At trial, Gomez testified on his own behalf and denied any involvement in the conspiracy.

---

[1] These witnesses were originally Gomez' co-defendants in the conspiracy charge; they pled guilty prior to trial.

He denied selling any cocaine to the alleged co-conspirators or to Danny Saldana; indeed, he stated that he had never sold drugs to anyone.

I.

Gomez' main contention on appeal is that the district court should have given the following requested jury instruction:

> Members of the jury, if, from the evidence presented, you find that only a buyer and seller relationship existed between this Defendant and the witnesses who have admitted their participation in the Sparkling City Car Wash operation, then, in such event you must acquit this Defendant. Mere proof of the existence of a Buyer-Seller relationship is not enough to convict one as a co-conspirator on drug conspiracy charges.

We review the district court's refusal to give the requested instruction for an abuse of discretion. *See United States v. Trujillo,* 146 F.3d 838, 846 (11th Cir.1998). Refusal to give a jury instruction constitutes an abuse of discretion only if, *inter alia,* the proposed instruction dealt with an issue properly before the jury. *See United States v. Lyons,* 53 F.3d 1198, 1200 (11th Cir.1995).

The proposed jury instruction did not deal with an issue properly before the jury. The jury in this case had to make a credibility choice between Gomez, who denied any drug sales, and the Government's witnesses, who stated that Gomez made repeated sales of substantial quantities to them. If the jury believed Gomez, it would conclude that he was entirely innocent of wrongdoing because he had sold no drugs whatsoever. If the jury believed the Government's witnesses, it would conclude that Gomez had engaged in a pattern of sales sufficient to link him to the conspiracy—the quantity and frequency of the sales would have put Gomez on notice that the drugs were being purchased with an intent to distribute. *See United States v. Cordova,* 157 F.3d 587, 597 (8th Cir.1998) (noting that a buyer-seller jury instruction "is appropriately given in a single transaction case involving small quantities of drugs consistent with personal use"); *United States v. Berry,* 133 F.3d 1020, 1023 (7th Cir.1998) (noting that "[e]vidence of a conspiracy, as opposed to a buyer-seller

relationship, may include transactions involving large quantities of drugs [and] prolonged cooperation between the parties"). Under neither scenario could the jury reasonably conclude that Gomez was in a mere buyer-seller relationship with the members of the conspiracy. *See United States v. Canino,* 949 F.2d 928, 941 (7th Cir.1991) (holding that where the Government alleged sales of large quantities of drugs and the defendants's defense was improper venue, a buyer-seller instruction "would have been an absurdity given the evidence submitted at trial"). The district court therefore did not abuse its discretion in refusing to give the proposed instruction.

## II.

Gomez also challenges the calculation of his offense level under the Sentencing Guidelines. The Sentencing Guidelines create differing base offense levels for drug offenses depending on the quantity of drugs involved. *See* United States Sentencing Commission, *Guidelines Manual,* § 2D1.1(c) (Nov. 1, 1995). The district court, in calculating Gomez' base offense level, determined that Gomez was responsible for selling three and one-quarter kilograms of cocaine; this amount included the two kilograms sold to Danny Saldana. This resulted in a base offense level of twenty-eight, *see* U.S.S.G. § 2D1.1(c)(6), to which two points were added for obstruction of justice, resulting in a total offense level of thirty.[2] Gomez had a criminal history category of three; thus, the applicable sentencing range was 121-151 months. *See* U.S.S.G. ch. 5, pt. A. He was sentenced to 136 months imprisonment.

The district court erred in including the cocaine sold to Danny Saldana in calculating Gomez' base offense level. Under the sentencing guidelines, a defendant may be held accountable at sentencing for illegal conduct not in furtherance of the offense of conviction if that conduct was

---

[2]The obstruction of justice points were based on Gomez' alleged perjury in testifying that he had never sold drugs.

"part of the same course of conduct or common scheme or plan" as the offense of conviction. U.S.S.G. § 1B1.3(a)(2). Whether two acts are part of the "same course of conduct" depends largely on how the relevant "course of conduct" is defined. If the course of conduct in this case is merely the distribution of cocaine, then the sale to Saldana would certainly be part of that course of conduct. This, however, seems too broad of a characterization. The course of conduct on which the indictment and the trial focused was the distribution of cocaine *through the Sparkling City Car Wash operation,* out of which the conspiracy operated and from which the relevant "intent to distribute" applied. Therefore, only sales that are related to the Sparkling City Car Wash operation should be considered part of the same course of conduct.

Danny Saldana was in no way connected to the Sparkling City Car Wash operation; the testimony relating to his cocaine purchases presumably was elicited pursuant to Federal Rule of Evidence 404(b) merely as evidence of Gomez' intent to distribute. *See United States v. Hernandez,* 896 F.2d 513, 521-22 (11th Cir.1990). Consequently, the sales to Saldana were not part of the "same course of conduct" as the conspiracy, and should not have been included in calculating Gomez' base offense level.

Looking at the issue another way, the background commentary to U.S.S.G. § 1B1.3(a)(2) states that it is generally meant to apply to offenses that "involve a pattern of misconduct that cannot readily be broken into discrete, identifiable units." When an act of misconduct can be easily distinguished from the charged offense, a separate charge is required. *See United States v. Blanc,* 146 F.3d 847, 852-54 (11th Cir.1998). In this case, the sale to Saldana is conceptually distinct from the Sparkling City Car Wash conspiracy, and easily could have been brought as a separate charge against Gomez. It was therefore inappropriate to use this sale in calculating the sentence for Gomez' conspiracy conviction.

Finally, we note that this case is virtually indistinguishable from *United States v. Maxwell,* 34 F.3d 1006 (11th Cir.1994). In that case, Maxwell was indicted for conspiracy to possess with intent to distribute dilaudid. The conspiracy operated as follows: Maxwell and another individual supplied dilaudid (and, on one occasion, cocaine) to an individual named Lundy; Lundy then sold the drugs to three other individuals who sold them to the end users. The Government, in order to prove criminal intent on the part of Maxwell (who had pled not guilty), introduced evidence of Maxwell's other drug dealings. This evidence included the sale of 546 grams of cocaine to an individual not in the conspiracy; these 546 grams were then added to the cocaine sale that Maxwell had made as part of the conspiracy in calculating his sentence. We vacated Maxwell's sentence on the ground that the district court clearly erred in including the 546 grams in determining Maxwell's base offense level.[3]

This is not to say that, in calculating a defendant's base offense level for a drug conspiracy conviction, uncharged drug sales to persons outside of the conspiracy can never be included. On the contrary, we have previously held—and continue to hold—that uncharged criminal activity outside of a charged conspiracy may be included in sentencing if the uncharged activity is sufficiently related to the conspiracy for which the defendant was convicted. *See United States v. Fuentes,* 107 F.3d 1515, 1525-26 (11th Cir.1997); *Maxwell,* 34 F.3d at 1011; *see also* U.S.S.G. § 1B1.3, comment. (n.9)(B) (giving examples of factors to be considered in determining whether an offense is part of the "same course of conduct" as another offense, including "the degree of similarity

---

[3]*Maxwell* is slightly different from this case in that Maxwell's side dealings involved cocaine while the conspiracy with which he was charged involved dilaudid, whereas Gomez' side dealings and the conspiracy with which he was charged both involved cocaine. Maxwell, however, as noted above, distributed at least some cocaine as part of his conspiracy. More importantly, the fact that Maxwell's side dealings involved a different narcotic while Gomez' side dealings involved the same narcotic simply is not a substantial distinction.

of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses"). Under the facts of this case, however, the uncharged drug sales were totally unrelated to the conspiracy, and thus should not have been included in calculating the defendant's base offense level.

Removing the two kilograms sold to Danny Saldana from the calculation brings the total quantity of drugs attributable to Gomez down to one and one-quarter kilograms, resulting in a base offense level of twenty-six. *See* U.S.S.G. § 2D1.1(c)(7). This, combined with two points for obstruction of justice and a criminal history category of three, results in a sentencing range of 97-121 months. *See* U.S.S.G. ch. 5, pt. A.

### III.

For the foregoing reasons, the case is remanded for resentencing. In all other respects, the judgment of the district court is affirmed.[4]

AFFIRMED in part, VACATED and REMANDED in part.

---

[4]Gomez also raises challenges to the sufficiency of the evidence, to the admission of certain evidence relating to prior convictions, and to the admission of the testimony of Leanor Leal. We have reviewed these challenges and determined that they are without merit.