[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10883
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 1, 2010
JOHN LEY
CLERK

D.C. Docket No. 1:08-cr-00371-CG-B-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JAMES BODY,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(October 1, 2010)

Before BLACK, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

James Body appeals his 136-month sentence for conspiring to possess

cocaine with intent to distribute. The primary question on appeal is whether the

district court clearly erred by finding that Body's drug transactions in 2001 and 2002 were relevant conduct in calculating his guideline sentencing range. We find clear error and therefore vacate Body's sentence and remand for re-sentencing.

## I. Background

In September 2008, after a traffic stop, a police officer found James Body in possession of approximately five ounces of powder cocaine. Body pleaded guilty to conspiring to distribute cocaine between September 1, 2008 and September 19, 2008. The presentencing investigation report (PSI), relying primarily on Body's relevant conduct, held him accountable for 64 kilograms of powder cocaine, 1 ounce of crack cocaine, and 240 pounds of marijuana. Body objected to this drug-quantity attribution.

At the sentencing hearing, the government called two witnesses to support this drug-quantity estimate. First, Darnell Watkins testified that Body had purchased approximately eight kilograms of cocaine from him for distribution in 2001 and 2002. Second, Tuwanne Lucas testified that he had purchased one ounce of crack cocaine from Body on "maybe five or six" occasions in 2002.

Body objected that these 2001-2002 drug transactions were not relevant conduct to his current offense and therefore should not be attributed to him for the purposes of sentencing. He argued that there was no connection between his

2

current offense and the prior drug transactions because he had been in prison between 2003 and 2007 and had obtained a job after his 2007 release from prison. Body contended that an appropriate sentence would be closer to the "initial report that came out without any relevant conduct . . . [which recommended] a 37-month to 50-something month sentence." Body also argued that both witnesses were unreliable because they both testified as part of cooperation agreements with government.[1]

Although the district court acknowledged Body's time in state prison from 2003 to 2007, it nevertheless found that his activities in 2001 and 2002 were relevant conduct for sentencing purposes. Specifically, the court explained that Body's current offense was "the same course of conduct that he was doing before he went to prison on the state conviction [in 1995] and when he got out again [in 2000]." Relying solely on Watkins's and Lucas's testimony from the hearing, the district court found that Body sold a total of five ounces of crack cocaine to Lucas and approximately eight and one-half kilograms of cocaine to Watkins. The court then converted these amounts to marijuana equivalencies and calculated a guideline range of 135 to 168 months' imprisonment. The court ultimately

_____

[1] In addition, Watkins admitted on cross-examination that he blamed Body's son for his own federal charges.

3

imposed a low-end guideline sentence of 136 months' imprisonment.

## II. Discussion

Body challenges the district court's factual finding that his 2001-2002 drug transactions were part of the same "course of conduct" as his offense of conviction. *See* U.S.S.G. § 1B1.3(a)(2). In particular, he argues that the district court clearly erred because his conduct between 2001 and 2002 was temporally remote from his instant offense and because the presence of cocaine was the only similarity between the 2001-2002 conduct and the instant offense.

We review the district court's factual findings for clear error. *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005). A factual finding is clearly erroneous only if, after reviewing all of the evidence, we are left with the "definite and firm conviction that a mistake has been committed." *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004). A district court's factual findings in support of a sentencing calculation, however, must be based on reliable and specific evidence and cannot be based on speculation. *United States v. Cataldo*, 171 F.3d 1316, 1321-22 (11th Cir. 1999).

Relevant conduct under the Sentencing Guidelines includes all acts committed by the defendant "that were part of the same course of conduct."

4

U.S.S.G. § 1B1.3(a)(2). "Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id*., comment. (n.9(B)). When one of the above factors is absent, "a stronger presence of at least one of the other factors is required." *Id*.

Here, the only apparent similarity between Body's earlier drug transactions and the instant offense was the distribution of cocaine. This level of similarity, however, is not sufficient. *See United States v. Gomez*, 164 F.3d 1354, 1356 ("If the course of conduct . . . is merely [characterized as] the distribution of cocaine, then the sale to [a party not included in the charged offense] would certainly be part of that course of conduct. This, however, seems too broad of a characterization."). In fact, there was no evidence that Body's 2001-2002 conduct had "distinctive similarities" to the instant offense, such as a similar *modus operandi* or the involvement of the same parties. *United States v. Maxwell*, 34 F.3d 1006, 1011 (11th Cir. 1994). Because the level of similarity is not sufficient, we therefore must find a "stronger presence" of at least one of the other two factors. *See* U.S.S.G. § 1B1.3(a)(2), comment. (n.9(B)). Neither factor can be found in a stronger guise. From a temporal perspective, Body's drug transactions

5

took place at least six years prior to his instant offense. Furthermore, there is no evidence that Body's drug transactions took place with significant regularity between 2001 and 2008.

Thus, Body's earlier conduct from 2001 and 2002 can be easily distinguished from his instant conviction. *United States v. Gomez*, 164 F.3d 1354, 1357 (11th Cir. 1999) ("when an act of misconduct can be easily distinguished from the charged offense, a separate charge is required."); *see also* U.S.S.G. § 1B1.3(a)(2), comment. (backg'd.) (stating that relevant conduct often "involve[s] a pattern of misconduct that cannot readily be broken into discrete, identifiable units."). Accordingly, we **VACATE** Body's sentence and **REMAND** for re-sentencing.