[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-11928
Non-Argument Calendar

_____

D.C. Docket No. 0:12-cr-60216-RSR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES RICHARD JOHNSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 7, 2014)

Before HULL, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

After pleading guilty, James Johnson appeals his 120-month sentence for conspiracy to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 846.  On appeal, Johnson argues that his sentence is procedurally and substantively unreasonable.  After review, we affirm.

We review the reasonableness of a sentence for an abuse of discretion using a two-step process.  United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008).  We look first at whether the district court committed any significant procedural error, such as miscalculating the advisory guidelines range, treating the guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to explain adequately the chosen sentence.  Id.

Then, we examine whether the sentence is substantively unreasonable under the totality of the circumstances.  Id.  Although we do not automatically presume a sentence within the guidelines range is reasonable, we ordinarily expect such a sentence to be reasonable.  United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008).  A sentence imposed well below the statutory maximum is another indicator of a reasonable sentence.  See United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008).  The defendant bears the burden to show his sentence is

unreasonable in light of the record and the § 3553(a) factors.[1] United States v. Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006).

With respect to procedural reasonableness, Defendant Johnson raises two guidelines calculation errors, neither of which has merit.[2] First, the district court did not clearly err in attributing to Johnson pseudoephedrine purchases he made before he met two of his coconspirators, codefendant Amanda Stern and another individual identified as "SZ" in May 2012. By pleading guilty, Johnson admitted that he conspired with Stern and "others known and unknown," to manufacture methamphetamine "from at least on or about January 9, 2012 until on or about July 11, 2012." See United States v. Fairchild, 803 F.2d 1121, 1124 (11th Cir. 1986) (stating that an unconditional guilty plea admits all the elements of a formal criminal charge).

Furthermore, contrary to Johnson's claim, his charged conspiracy was not limited to only Stern and SZ and did not begin when he met Stern and SZ at a Target store and they agreed to buy pseudoephedrine for him. It is undisputed that,

---

[1]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

[2]We review the district court's application of the guidelines de novo and its factual finding for clear error. United States v. Almedina, 686 F.3d 1213, 1213 (11th Cir. 2011).

after Johnson's arrest, he admitted to manufacturing methamphetamine about twice a month for four years for his personal use and that of his friends. Johnson further admitted to using individuals other than Stern and SZ, such as his ex-girlfriend Laura Markheim and homeless people, to buy the pseudoephedrine he needed to make the methamphetamine. Under the circumstances, the district court did not clearly err in finding that Johnson's own pseudoephedrine purchases made during the conspiracy period were part of the charged conspiracy. Given that relevant conduct includes a defendant's own acts in furtherance of a drug conspiracy, see U.S.S.G. § 1B1.3(a)(1)(A), the district court properly included in its drug quantity determination Johnson's own pseudoephedrine purchases made during the charged conspiracy period.[3]

Second, the district court did not clearly err when it applied the two-level enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining a premises for the purposes of manufacturing methamphetamine. The undisputed facts show that about twice a month Johnson made methamphetamine at a storage unit he rented. The fact that Johnson also used the storage unit to store his personal belongings

---

[3]Johnson's reliance on United States v. Gomez, 164 F.3d 1354 (11th Cir. 1999) is misplaced. Gomez involved a defendant held accountable for an uncharged drug transaction that occurred away from the car wash where all the other transactions in the drug conspiracy took place. 164 F.3d at 1355, 1357. The Court in Gomez explained that although a defendant "may be held accountable at sentencing for illegal conduct not in furtherance of the offense of conviction," it must be part of the same course of conduct or common scheme or plan, which the uncharged drug transaction was not. Id. at 1356 (emphasis added). Here, however, Johnson's pseudoephedrine purchases between January and May 2012 were part of the charged methamphetamine conspiracy to which he pled guilty and were in furtherance of that offense.

4

does not preclude application of the enhancement.  See U.S.S.G. § 2D1.1, cmt. n.17 (providing that the manufacturing of a controlled substance need not be the only purpose for which the premises were used, but must be one of the primary or principal uses and not an incidental or collateral use).  Given the frequency over time that Johnson used the storage facility to make methamphetamine, we cannot say the district court clearly erred in finding that his methamphetamine manufacturing was one of the primary purposes of the storage unit.

Defendant Johnson also has not shown that his 120-month sentence, at the low end of the advisory guidelines range of 120 to 151 months, was substantively unreasonable.  In the charged conspiracy, Johnson was the one who made the methamphetamine, which, as the district court noted, is an inherently dangerous process involving toxic and explosive chemicals.  In addition to purchasing pseudoephedrine, Johnson recruited others to do so for him, including paying homeless individuals.  While Johnson was not a large-scale methamphetamine distributor, he nonetheless trafficked in methamphetamine by sharing it with his co-conspirators and friends.  Furthermore, as the district court pointed out, Johnson introduced codefendant Stern to the drug.  We reject Johnson's characterization of himself as merely a drug addict who was unfairly sentenced as a drug trafficker.

Johnson also has an extensive, thirty-year criminal history, with many theft and drug-related convictions and arrests.  Although the district court acknowledged

5

that many of Johnson's offenses appear to stem from his long-term drug addiction, the district court further observed that Johnson had not shown any positive behavior during those thirty years and appears incapable of changing or of following the law.

Defendant Johnson argues that the district court failed to accord sufficient weight to his mitigating factors, such as his chronic drug addiction, the fact that he manufactured only small amounts of methamphetamine mainly for his personal use, and the fact that his criminal history included many "minor" crimes "indicative of his status as a chronic drug addict." The district court explicitly considered all of these mitigating factors at sentencing, and was within its discretion in concluding that they were outweighed by other factors, such as the need to protect the public, promote respect for the law, and deter future criminal and thus did not justify a downward variance. See United States v. Williams, 526 F.3d 1312, 1322 (11th Cir. 2008) ("[T]he weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." (quotation marks omitted)). To the extent Johnson asks this Court reweigh individual § 3553(a) factors, this is not something we do when, as here, the ultimate sentence imposed is reasonable. See United States v. Snipes, 611 F.3d 855, 872 (11th Cir. 2010).

6

Finally, Johnson argues that his sentence is unreasonable because the district court "gave improper weight to prejudicial factual findings that were irrelevant and/or unsupported."[4]  Specifically, Johnson points to the district court's comments that: (1) Johnson introduced SZ to methamphetamine and drove "while he apparently [was] using these drugs"; and (2) that Johnson's criminal history included a pending "domestic-type" charge and two other offenses in which Johnson was found by law enforcement in possession of a knife.

The district court's statements do not require us to remand for resentencing. First, the district court may properly consider a defendant's history and characteristics, including any undisputed criminal history described in the PSI. Johnson did not object to the criminal history portion of his PSI.  Thus, the PSI's descriptions of Johnson's convictions, arrests, and pending charges—including his possession of a knife during two arrests and his pending charge for domestic battery—were deemed admitted.  See United States v. Beckles, 565 F.3d 832, 844 (11th Cir. 2009) (explaining that the defendant's failure to object to the PSI's factual statements renders those statements undisputed and allows the sentencing

_____

[4]Johnson characterizes the alleged error as the consideration of improper or irrelevant factors and argues that his sentence is substantively unreasonable.  See United States v. Irey, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (explaining that a sentence may be substantively unreasonable if the district court gave "significant weight to an improper or irrelevant factor"). However, the gravamen of Johnson's argument is that the district court made assumptions that were not supported by the record and thus were clearly erroneous.  See Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007) (stating that a sentence is procedurally unreasonable if it is based on clearly erroneous facts).  Regardless of how the alleged error is characterized, for the reasons discussed above, no reversible error has been shown.

court to rely upon them).  Notably, Johnson has never challenged the factual accuracy of the PSI's description of his criminal history.  See United States v. Williams, 989 F.2d 1137, 1142 (11th Cir. 1993) (concluding that the district court may rely upon a PSI's undisputed summary of the facts surrounding an offense or arrest).

Johnson is correct that he was not arrested for or charged with driving under the influence.  However, Johnson does not dispute that he has been a drug addict his entire adult life and that he committed numerous driving offenses over that same time period.  Moreover, the district court properly considered Johnson's driving record as part of his entire criminal history over thirty years.  Although the district court was concerned that Johnson may have driven while under the influence of drugs, the record does not suggest that district court selected the 120-month sentence based on this particular concern.  Rather, the district court concluded that Johnson's entire criminal history, considered as a whole, demonstrated that he was unable to follow the law and therefore posed a danger to the public.  The fact that Johnson was not actually arrested for driving under the influence does not make the court's overarching concern any less valid.

Johnson is also correct that the record is silent as to whether SZ had used methamphetamine before meeting Johnson.  However, the record is clear that codefendant Stern did not use methamphetamine until Johnson gave it to her.

8

Given that Johnson had in fact introduced another person to methamphetamine, the district court's misstatement (that he introduced the drug to both SZ and Stern) is harmless.  See United States v. Mathenia, 409 F.3d 1289, 1292 (11th Cir. 2005) (stating that a harmless error is one that either did not affect the sentence or had only a very slight effect).

In sum, in light of the totality of the circumstances, we cannot say that the district court abused its discretion when it imposed a 120-month sentence, at the low end of the advisory guidelines range.

**AFFIRMED.**