[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-12257

_____

D.C. Docket No. 8:11-cr-00333-SDM-TGW-6

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PEDRO LAZARO RODRIGUEZ,
CHESTER JOHN FLOYD,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(March 12, 2014)

Before PRYOR and MARTIN, Circuit Judges, and GOLD,[*] District Judge.

PRYOR, Circuit Judge:

This appeal raises four challenges to the judgments of convictions and

sentences of two co-conspirators in a Florida drug ring. First, we must decide

_____

[*]Honorable Alan Stephen Gold, United States District Judge for the Southern District of Florida,
sitting by designation.

whether there was sufficient evidence to convict Chester Floyd, who received shipments of methamphetamine and cocaine to his address. Second, we must decide whether Pedro Rodriguez was denied a fair trial because of statements made by Floyd's counsel in his closing argument. Third, we must decide whether Pedro Rodriguez was denied a fair trial because the district court did not *sua sponte* sever his trial from Floyd's. Fourth, we must decide whether Rodriguez must be resentenced because the district court enhanced his sentence with a prior conviction that was not final before the drug conspiracy ended. *See* 21 U.S.C. § 841(b)(1)(A)(viii). We **AFFIRM** the judgments of convictions of both defendants, but we **VACATE** the sentence of Rodriguez and **REMAND** for resentencing.

## I. BACKGROUND

Chester Floyd and Pedro Rodriguez participated in a drug conspiracy led by Victor Yanez-Gutierrez, the drug supplier, and Juan Hernandez-Ramirez, the drug wholesaler. The conspiracy transported cocaine, marijuana, and methamphetamine from California to Florida by smuggling it in cars on car haulers or concealing it in FedEx and UPS deliveries. Rodriguez chauffeured Hernandez-Ramirez and sold portions of the conspirators' supply of methamphetamine. Floyd, who often purchased methamphetamine from Hernandez-Ramirez, later became involved with the conspiracy when he agreed to receive shipments of the drugs to the trailer

2

where he resided. When federal authorities arrested members of the drug ring, they seized dozens of kilograms of cocaine, more than five pounds of methamphetamine, and over $800,000 in drug proceeds.

The United States filed a superseding indictment against Floyd and Rodriguez, along with another co-conspirator, and charged them as participants in the drug conspiracy that began "on an unknown date and continu[ed] until on or about July 20, 2011." *See* 21 U.S.C. §§ 841(b)(1)(A)(ii), (b)(1)(A)(viii), (b)(1)(D), 846. The superseding indictment also charged that Floyd, a convicted felon, knowingly possessed a firearm, 18 U.S.C. §§ 922(g)(1), 924(a)(2), and aided and abetted others who possessed or used a firearm or carried a firearm in furtherance of a drug trafficking crime, *id.* § 924(c)(1)(A)(i). The superseding indictment also charged that Rodriguez was a participant in a money laundering scheme, 18 U.S.C. §§ 1952(a)(1), 1956(h), and aided and abetted the sales of methamphetamine at his apartment, 21 U.S.C. § 856(a)(1), (b).

The district court conducted a joint trial of Floyd and Rodriguez, and the jury convicted both conspirators on all counts. The court then sentenced Floyd to 300 months of imprisonment and sentenced Rodriguez to life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A)(ii), (b)(1)(B)(viii).

## II. STANDARDS OF REVIEW

Two standards of review govern this appeal. First, we review a claim that there was insufficient evidence to convict a defendant *de novo*. *United States v. Brazel*, 102 F.3d 1120, 1131 (11th Cir. 1997). We resolve all reasonable inferences and credibility determinations in favor of the United States and ask whether a reasonable jury could have concluded the evidence established the defendant's guilt beyond a reasonable doubt. *Id.* Second, we review an objection first raised on appeal for plain error. *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005). We may not correct an error that the defendant failed to raise in the district court unless the defendant establishes that there was an error, that was plain, and that affected his substantial rights. *Id.* And even if all three of those conditions are met, we may correct that error only if it seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.*

## III. DISCUSSION

We divide our discussion in two parts. First, we explain the three challenges that Floyd and Rodriguez raise about their judgments of convictions. We conclude that none of those challenges warrants vacatur of their judgments of convictions. Second, we address the meritorious challenge that Rodriguez raises about his sentence and that the United States concedes.

4

*A. We Affirm the Judgments of Convictions of Both Defendants.*

Floyd and Rodriguez raise three challenges related to their trial. Floyd argues that there was insufficient evidence to convict him as a co-conspirator. Rodriguez argues that comments made by Floyd's counsel during closing arguments prejudiced his trial. And Rodriguez argues that the judge should have *sua sponte* severed the trials of the co-conspirators. We discuss each in turn.

1. There Was Sufficient Evidence that Floyd Voluntarily Joined the Conspiracy.

To establish that Floyd was a member of the conspiracy, the United States must have proved beyond a reasonable doubt that a conspiracy existed, Floyd knew of it, and with that knowledge, he voluntarily joined the conspiracy. *Brazel*, 102 F.3d at 1131. But merely buying drugs from a drug dealer is not punishable as a conspiracy because that "transaction is simply not probative of an agreement to join together to accomplish a criminal objective beyond that already being accomplished by the transaction." *United States v. Mercer*, 165 F.3d 1331, 1335 (11th Cir. 1999) (internal quotation mark omitted). We cannot infer a conspiracy based solely on an isolated instance of a defendant's distribution of drugs to friends or houseguests, *United States v. Hardy*, 895 F.2d 1331, 1335 (11th Cir. 1990), but repeated purchases of large quantities of drugs might evidence something more than a buyer-seller relationship, *United States v. Gomez*, 164 F.3d 1354, 1356 (11th Cir. 1999).

Floyd argues that the evidence against him proves that he was only a buyer of drugs, but there was sufficient evidence for reasonable jurors to conclude that he was a member of the conspiracy. Floyd agreed to receive some of the drug shipments on behalf of the conspiracy. Not only was he present when those large drug shipments arrived at his trailer, but he also helped unpack some of the drugs by dismantling the tailgate of a Toyota Tundra loaded with methamphetamine and taking apart a radio full of cocaine. Moreover, Floyd owed Hernandez-Ramirez $7,000 or $8,000 for drug purchases made on credit, and Hernandez-Ramirez testified that, when he would deliver drugs to Floyd, "[Floyd] would ask [Hernandez-Ramirez] for more because sometimes he'd say the people were asking for more because the drugs were very good and he would need more." Hernandez-Ramirez also testified that the quantity of drugs sold to Floyd were "a large amount to use at the same time even if a person is a heavy [drug] user."

A jury could reasonably infer from this evidence that Floyd knowingly and voluntarily joined the conspiracy. Floyd performed acts going beyond a buyer-seller relationship when he received the drug shipments at his trailer, temporarily stored the drugs there, and purchased drugs in large quantities. The district court did not err when it denied Floyd's motion for a judgment of acquittal because the record, viewed in the light most favorable to the United States, established that Floyd knowingly participated in the conspiracy.

## 2. Statements by Floyd's Counsel Did Not Infringe Rodriguez's Right to a Fair Trial.

Rodriguez argues for the first time on appeal that the following statement of Floyd's counsel infringed his right to a fair trial:

> [J]ust like any big organization who's well organized and well run, you have team meetings, right? Where did they have their team meetings? Well, they had the team meetings when they went to count the money.
>
> It seems everybody who was part of the conspiracy managed to stumble in at one point or another and show up at these team meetings. Hey, where is Chester by the way? Anybody ever have a Chester Floyd sighting at the money meetings?
>
> [Shaking head negatively] No. He wasn't part of the conspiracy.

Rodriguez contends that Floyd's counsel misstated the law because the statement suggests that Rodriguez's mere presence at the money meetings was sufficient to prove Rodriguez's guilt.

The remarks by Floyd's counsel were not improper. The import of the remarks was not that mere presence suffices for guilt; instead, the import was that Floyd's noticeable absence from these meetings was exculpatory evidence tending to prove that Floyd was not part of the conspiracy. And even if the remarks were improper, Rodriguez cannot establish that the remarks prejudiced him. The district court gave limiting instructions that statements by the lawyers are not evidence and are not binding on the jurors and that mere presence is not sufficient proof that a defendant is a co-conspirator.

7

3. The District Court Did Not Err When It Did Not Sever the Trial *Sua Sponte.*

"There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537, 113 S. Ct. 933, 937 (1993); *see* Fed. R. Crim. P. 8(b) (stating that defendants charged in the same indictment may be tried together "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."). A district court has "substantial discretion" to decide whether to sever the trials of two or more co-defendants. *United States v. Blankenship*, 382 F.3d 1110, 1120 (11th Cir. 2004) (internal quotation mark omitted). For a defendant to establish that his trial should have been severed from his co-defendant's, the defendant must first establish that he was prejudiced by the joint trial. *Id.* at 1122. If a defendant establishes that he was prejudiced, we then determine whether severance was the correct remedy for that prejudice. *Id.* There are only two circumstances in which severance is the only permissible remedy: first, when serious risk that a joint trial would compromise a specific trial right of one of the defendants; and second, when a joint trial prevents the jury from making a reliable judgment about guilt or innocence. *Id.* at 1123.

Rodriguez argues that the closing and opening statements of Floyd's counsel required the district court to sever his trial from Floyd's. Rodriguez objects to the opening statement of Floyd's counsel, in which he remarked to the jurors that

"while you may hear a lot of evidence regarding Mr. Rodriguez, uh, we would like for you, as you're considering this, that Mr. Floyd is a separate defendant," because that statement "trumped up" the evidence against Rodriguez. He also objects to the same closing statement regarding Floyd's absence at the money meetings that we discussed above. But these statements neither trumped up the evidence against Rodriguez nor misstated the law.

Rodriguez has not established that the district court plainly erred when it did not sever the trials *sua sponte*. Floyd's counsel stated only that the jurors "*may* hear a lot of evidence regarding Mr. Rodriguez." Moreover, he correctly restated basic tenants of the law of conspiracy—that jurors must make independent determinations of the guilt of each defendant even if tried together and that mere presence among conspirators is not sufficient evidence of guilt. And severing the trial of Floyd and Rodriguez was not the only option available to the district court to remedy any prejudice from the remarks. The district court gave a limiting instruction to the jury that "[it] must consider the case of each defendant separately and individually. If [the jurors] find a defendant guilty of one crime, that must not affect [the jury's] verdict for any other crime or any other defendant." The court also instructed that "[a]nything the lawyers say is not evidence and is not binding on [the jurors]," and that mere presence is not sufficient proof that a defendant is a co-conspirator. As the Supreme Court stated in *Zafiro*, these limiting instructions

9

"often will suffice to cure any risk of prejudice," which might have resulted from the statements of Floyd's counsel. 506 U.S. at 539, 113 S. Ct. at 938.

### B. We Vacate the Sentence of Rodriguez Because His Prior Conviction Was Not "Final."

Rodriguez did not object to his life sentence at his sentencing hearing, but, as the United States concedes, the district court plainly erred when it sentenced Rodriguez to a mandatory life sentence based on two prior drug convictions, one of which was not final before the drug conspiracy ended on July 20, 2011. The statute that mandates a life sentence for repeat drug offenders provides, "If any person commits a violation of this subparagraph or of section 849, 859, 860, or 861 of this title *after two or more prior convictions for a felony drug offense have become final*, such person shall be sentenced to a mandatory term of life imprisonment without release and fined in accordance with the preceding sentence." 21 U.S.C. § 841(b)(1)(A)(ii), (b)(1)(B)(viii) (emphasis added). One of Rodriguez's prior convictions was a Florida conviction for possession of methamphetamine. A Florida court convicted Rodriguez on June 29, 2011, but that conviction was not final until July 29, 2011, when Rodriguez's time to appeal that conviction expired. *See* Fla. R. App. P. 9.140(b)(3). Because the indictment alleges that the conspiracy ended on July 20, 2011, nine days before the time to appeal the prior conviction expired, Rodriguez did not violate section 841 "after" his prior offense became "final" as the statute requires. *See United States v. Lippner*, 676 F.2d 456, 467

10

(11th Cir. 1982) ("[F]or the purposes of enhanced sentencing under § 841(b)(1)(B), a conviction is not final until all avenues of direct attack have been exhausted."). Rodriguez is entitled to resentencing so that the district court may consider the correct mandatory minimum sentence, which would be a 20-year sentence and not a life sentence. *See* 21 U.S.C. § 841(b)(1)(A)(ii), (b)(1)(B)(viii).

## IV. CONCLUSION

We **AFFIRM** the judgments of convictions of Floyd and Rodriguez. We **VACATE** the sentence of Rodriguez and **REMAND** for resentencing.