[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14436
Non-Argument Calendar
_____

D.C. Docket No. 3:15-cr-00019-MCR-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

EDDIE CASANOVA,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(January 26, 2017)

Before TJOFLAT, JORDAN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Eddie Casanova appeals his conviction for conspiracy to distribute, and possess with the intent to distribute, 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 & 841(b)(1)(A)(ii). Mr. Casanova argues that there was insufficient evidence to sustain a conviction for the charged conspiracy because the government only presented evidence of two unrelated conspiracies, and not a single unified one.

Mr. Casanova also challenges his 262-month sentence, first arguing that the district court clearly erred in assigning him a base offense level of 32 under U.S.S.G. § 2D1.1(c)(4) because the conspiracy did not involve more than 15, but less than 50, kilograms of cocaine. He asserts that the testimony of a co-defendant about an amount of additional cocaine was imprecise and uncorroborated, and that the additional cocaine that was referenced was transported outside of the timeframe for the conspiracy. Mr. Casanova additionally challenges two sentencing enhancements. He argues that the district court clearly erred in applying a 2-level increase under U.S.S.G. § 2D1.1(b)(12) for maintaining premises for the purpose of manufacturing or distributing a controlled substance. And he argues that the district court clearly erred in applying a 2-level increase under U.S.S.G. § 2D1.1(b)(1) for the presence of a firearm in connection with the conspiracy.

After consideration of the record and both parties' briefs, we affirm Mr. Casanova's conviction and sentence.

**I**

Mr. Casanova was charged by superseding indictment with one count of conspiracy to distribute, and possess with intent to distribute, 5 kilograms or more of cocaine. Mr. Casanova's co-defendants, Emilio Zundt, Jr., and Pablo Robledo, were also charged with conspiring to distribute, and possessing with intent to distribute, various amounts of cocaine. The indictment alleged that Mr. Zundt was responsible for 5 kilograms of cocaine or more and that Mr. Robledo was responsible for more than 500 grams, but less than 5 kilograms, of cocaine. Mr. Zundt and Mr. Robledo pled guilty and testified against Mr. Casanova at trial.

**A**

In March of 2015, Mr. Robledo was pulled over for a traffic violation in Mississippi while transporting cocaine from Texas to Florida for Mr. Casanova. During the traffic stop he consented to a search of his vehicle. The search led to the discovery of 3 kilograms of cocaine and 2 cellphones. Mr. Robledo then cooperated with the government and agreed to execute a controlled delivery.

Mr. Robledo made monitored contact via text messages and phone calls with "Primo" and "Lolo," the two individuals he was working with to transport the cocaine to Florida. At the instruction of the agents, Mr. Robledo continued to plan the meeting with "Lolo" to give him the cocaine. "Lolo" agreed to meet Mr. Robledo at a hotel and said he would be driving a black Toyota. At the time of

the rendezvous, "Lolo" was indeed driving a black Toyota and was arrested in connection with the cocaine that Mr. Robledo had been transporting. Mr. Robledo and the agent who had been monitoring the calls between Mr. Robledo and "Lolo" identified Mr. Casanova as "Lolo." An analysis of Mr. Casanova's phone revealed that he had several conversations with "Primo" and Mr. Robledo.

As the government continued its investigation, it located several vehicles and storage facilities either owned by or associated with Mr. Casanova in both Texas and Florida, including two storage units in Fort Walton Beach, Florida. At those locations they discovered items typically associated with the drug trade, such as packaging materials, digital scales, and cutting agents. There were also some old vestiges from Mr. Casanova's defunct stucco business.

An additional 4.5 kilograms of cocaine and a firearm were found in a black truck located in a rented parking space that was associated with Mr. Casanova at a storage unit in Texas. The manager of the storage facility was familiar with Mr. Casanova and his co-defendant, Mr. Zundt. The government then arrested Mr. Zundt.

Mr. Zundt had met Mr. Casanova two years earlier, when he was working as a handyman for Mr. Casanova. Mr. Casanova offered Mr. Zundt the opportunity to transport cocaine from Texas to Florida for him. Mr. Zundt testified at trial that he

4

had made numerous trips by bus and car transporting various amounts of cocaine for Mr. Casanova.

Mr. Zundt had been traveling with Mr. Casanova before he was arrested. They had journeyed from Texas to Florida together carrying between 4 and 5 kilograms of cocaine with them on the trip, though Mr. Casanova had anticipated that 8 kilograms would be transported from Texas to Florida. Mr. Casanova left Mr. Zundt at a hotel but failed to return from his meeting with Mr. Robledo. When Mr. Casanova did not return, Mr. Zundt took the cocaine back to Texas. He stopped at one of the storage facilities, changed cars, and removed a firearm that had been stored in the facility in order to hide it. Mr. Zundt testified that on a previous occasion Mr. Casanova had stored cocaine at one of the storage facilities, and that another time Mr. Casanova had prepared and packaged cocaine at one of the facilities.

Mr. Casanova did not present any witnesses at trial. He did, however, introduce evidence that his stucco business had received an award from the Deep Water Horizon oil spill. He then moved for a judgement of acquittal, which the district court denied.

Before deliberations began the district court gave the jury several instructions regarding conspiracy. One set out the basic concepts of a conspiracy, and explained that a person does not need to be aware of the entirety of the scheme

5

or all parties involved to be convicted of being a member of a conspiracy. The district court also provided an instruction concerning multiple conspiracies. The government, the district court explained, was required to prove that Mr. Casanova was guilty of the charged conspiracy with Mr. Robledo and Mr. Zundt. The government would not meet its burden if it only proved separate conspiracies between the men, with no overall connection between them.

The jury found Mr. Casanova guilty as charged. Mr. Casanova again moved for a judgment of acquittal, arguing that the evidence presented by the government was insufficient to prove the charged conspiracy. The district court denied the motion. Mr. Casanova also filed a motion for new trial, but it too was denied.

**B**

According to the PSI, Mr. Casanova had a base level offense of 32 under U.S.S.G. § 2D1 because his offense involved between 15 and 50 kilograms of cocaine. Mr. Casanova received a 2-level enhancement for maintaining premises for the purpose of manufacturing or distributing a controlled substance pursuant to U.S.S.G. § 2D1.1(b)(12), an additional 2-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possessing a firearm, and another 2-level enhancement for being the organizer or leader under U.S.S.G. § 3B1.1(c). This resulted in a total offense level of 38. Due to his prior criminal history, Mr. Casanova was assigned a criminal history category of II. An offense level of 38 and criminal history

6

category of II resulted in an advisory guideline range of 262 to 327 months' imprisonment. Mr. Casanova objected to his base level offense being 32, and to the 2-level enhancements for possession of a firearm and maintaining premises for the purposes of manufacturing or distributing a controlled substance.

The district court overruled all of Mr. Casanova's objections. It found that there was sufficient evidence presented to support a total offense level of 38. The district court added up the total amount of cocaine for all of the trips taken by Mr. Robledo and Mr. Zundt at the direction of Mr. Casanova, and conservatively estimated that 16.5 kilograms of cocaine had been transported in relation to this conspiracy.

The district court also found sufficient evidence to support the enhancement for maintaining premises for the purpose of manufacturing or distributing a controlled substance. The evidence showed that Mr. Casanova's stucco business had closed years earlier, and the only testimony concerning the storage facilities was that they had been used to store or prepare drugs, that a gun was kept at one facility, and that they contained various items associated with drug distribution.

Finally, the district court found sufficient evidence to support the enhancement for possession of a firearm. It found that the gun belonged to Mr. Casanova, was kept at storage facility where he sent Mr. Zundt to store cocaine, and was transported in the same car as the cocaine was when it was taken back to

Texas. The district court found that, based on these factors and Mr. Casanova's criminal history of drug dealing, the firearm was sufficiently related to the offense to allow the enhancement.

After overruling all of his objections, the district court sentenced Mr. Casanova to 262 months' imprisonment at the bottom of his advisory guideline range.

## II

Mr. Casanova first argues that there was insufficient evidence to support his conviction. He contends that the government did not prove an overarching conspiracy between himself and his two co-defendants, and instead only proved two separate conspiracies, one between himself and Mr. Robledo, and another between himself and Mr. Zundt. Mr. Casanova argues that the proof of these two purported schemes is insufficient to prove that the three men were all part of the same conspiracy. We disagree.

We review a sufficiency of the evidence claim *de novo*. *See United States v. Pacchioli*, 718 F.3d 1294, 1299 (11th Cir. 2013). We view the evidence in the light most favorable to the verdict and draw all reasonable inferences and credibility choices in its favor. *See id*. Credibility determinations are the province of the jury, and we typically do not invade that province and make our own credibility determinations. *See United States v. Copeland*, 20 F.3d 412, 413 (11th Cir. 1994).

8

Mr. Casanova's sufficiency of the evidence claim has taken the form of a variance claim. "A variance occurs when the evidence at trial establishes facts materially different from those alleged in the indictment." *United States v. Caporale*, 806 F.2d 1487, 1499 (11th Cir. 1986). In a conspiracy case where a variance is being alleged, we look to see if "a reasonable juror could have found the existence of a single conspiracy beyond a reasonable doubt." *United States v. Huff*, 609 F.3d 1240, 1243 (11th Cir. 2010). As an initial matter we conclude that, although Mr. Casanova did not use the term variance in the district court, his argument—that the government had proved two unrelated conspiracies and that he was being convicted of a different crime than what he was indicted for—was sufficient to preserve the claim for appeal. Thus we will review his claim *de novo* and not for plain error. *See United States v. Dennis*, 237 F.3d 1295, 1300 (11th Cir. 2001).

When a defendant claims a material variance between the indictment and the evidence presented at trial, we consider "[f]irst whether a material variance did occur, and second, whether the defendant suffered substantial prejudice as a result." *United States v. Chastain*, 198 F.3d 1338, 1349 (11th Cir. 1999). We look at the evidence in the light most favorable to the government to determine whether there was a material variance. *See United States v. Seher*, 562 F.3d 1344, 1366 (11th Cir. 2009).

In order to convict a defendant of conspiracy under 21 U.S.C. § 846, the government must show that (1) a conspiracy existed, (2) that the defendant knew of it, and (3) that the defendant, with knowledge, voluntarily joined it. *See United States v. Perez-Tosta*, 36 F.3d 1152, 1157 (11th Cir. 1994). "[T]here is no material variance from an indictment charging a single conspiracy if a reasonable trier of fact could have found beyond a reasonable doubt the existence of the single conspiracy charged in the indictment." *Caporale*, 806 F.2d at 1499–1500. In order to make that determination, we consider (1) whether a common goal existed, (2) the nature of the underlying scheme, and (3) the overlap of participants. *See Huff*, 609 F.3d at 1243.

There was sufficient evidence for the jury to find the existence of one overreaching conspiracy, as charged in the indictment, beyond a reasonable doubt. The evidence demonstrated that Mr. Casanova was involved in one unified singular conspiracy with Mr. Robledo and Mr. Zundt. The three men were active participants in the transportation of cocaine from Texas to Florida for the purposes of sale and distribution. The jury could have found beyond a reasonable doubt that there was sufficient evidence all three men were involved in that particular goal based upon the testimony of Mr. Zundt and Mr. Robledo. Although aspects of their testimony may have been uncorroborated, that testimony was sufficient to sustain Mr. Casanova's conviction. *See United States v. Broadwell*, 870 F.2d 594, 601

(11th Cir. 1989). The methodical nature and elaborate manner in which Mr. Casanova utilized multiple parties, multiple vehicles, and multiple facilities in order to transport his cocaine across state lines illustrates the underlying framework Mr. Casanova was using to run the cocaine scheme.

Mr. Robledo and Mr. Zundt did not know about each other, but that was not fatal because the conspiracy here was a "hub-and-spoke" conspiracy. *See Huff*, 609 F.3d at 1243–44. This kind of conspiracy occurs when one conspirator (Mr. Casanova) recruits a separate group of co-conspirators (Mr. Robledo and Mr. Zundt) to carry out various functions of the illegal enterprise. *See id.* In this case the evidence showed that Mr. Casanova was the hub moving along the spokes—Mr. Robledo and Mr. Zundt. As a general matter, spokes in such a conspiracy do not need to know each other, as long as they are aware of the common aim. *See Pacchioli*, 718 F.3d at 1303.

There was sufficient evidence to show that Mr. Robledo and Mr. Zundt were both generally aware that other parties were involved in transporting cocaine from Texas to Florida. Mr. Robledo was in constant communication with Mr. Casanova and "Primo" during his trip from Texas to Florida, demonstrating his knowledge that other people besides himself and Mr. Casanova were involved in transporting the cocaine across state lines. Mr. Zundt was also aware of the existence of other parties. He had transported cocaine multiple times for Mr. Casanova. He also

testified that on the last trip Mr. Casanova was expecting about 8 kilograms of cocaine, but he and Mr. Casanova only had between 4 and 5 kilograms. The additional 3 to 4 kilograms would have had to come from an additional party.

We note, as well, that the jury was given an instruction on the existence of multiple conspiracies, and expressly told that in order to convict Mr. Casanova, they had to agree that he was a member of the conspiracy charged in the indictment and not a member of some other conspiracy. That instruction gives us further confidence that the jury could reasonably find Mr. Casanova guilty beyond a reasonable doubt.

### III

Mr. Casanova challenges his base level offense of 32, which was based on more than 15, but less than 50, kilograms of cocaine. He asserts that the district court erred in its approximation and consideration of the weight of the cocaine of the previous trips taken by Mr. Zundt. We are not persuaded.

We review a district court's factual findings on the quantity of narcotics for clear error. *See United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005). Absent a "definite and firm conviction that a mistake has been committed," we will not overturn a district court's factual findings. *United States v. Crawford*, 407 F.3d 1174, 1177 (11th Cir. 2005).

12

The Sentencing Guidelines provide that the base offense level for a drug offense is to be calculated by determining the quantity of drugs attributable to a defendant. *See generally* U.S.S.G. § 2D1.1(a). When a conviction stems from a conspiracy charge, the defendant may be found responsible for the amount of drugs involved in all reasonably foreseeable acts done in furtherance of the conspiracy. *See* U.S.S.G. § 1B1.3(a)(1)(B). In addition, a defendant "may be held accountable at sentencing for illegal conduct not in furtherance of the offense of conviction if that conduct was part of the same course of conduct or common scheme or plan as the offense of conviction." *United States v. Gomez*, 164 F.3d 1354, 1356 (11th Cir. 1999) (internal quotation marks and citation omitted). In examining extrinsic conduct we evaluate the similarity, regularity, and temporal proximity between the count of conviction and the extrinsic offense in order to determine if they were part of the same course of conduct. *See United States v. Maxwell*, 34 F.3d 1006, 1011 (11th Cir. 1994).

"When a defendant objects to a factual finding that is used in calculating his guideline sentence, such as drug amount, the government bears the burden of establishing the disputed fact by a preponderance of the evidence." *Rodriguez*, 398 F.3d at 1296. Although the preponderance burden is less than that of a beyond a reasonable doubt, "it does not grant the court a license to sentence a defendant in the absence of sufficient evidence." *Id*.

The district court did not clearly err in finding that sufficient evidence was presented to assign Mr. Casanova a base level of 32 for possessing more than 15, but less than 50, kilograms of cocaine. The district court was permitted to use the evidence it heard during trial, undisputed statements in the PSI, and evidence presented at the sentencing hearing in making its determination. *See United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir. 1989).

We afford great deference to a district court's assessment of the credibility of witnesses and the evidentiary content of testimony. *See United States v. Lee*, 68 F.3d 1267, 1276 (1995). The district court relied upon the testimony of Mr. Zundt and Mr. Robledo to determine that Mr. Casanova was responsible for more than 15, but less than 50, kilograms of cocaine. When the amount of drugs seized does not match the scale of the offense, the district court is permitted to approximate the quantity of the controlled substance. *See United States v. Frazier*, 89 F.3d 1501, 1506 (11th Cir. 1996). When a district court approximates a quantity of drugs, the approximation must be fair, accurate, and conservative. *See United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir. 1998).

The evidence showed that 7.5 kilograms of cocaine were seized from Mr. Zundt and Mr. Robledo. The district court relied upon the testimony of Mr. Zundt about his other previous trips to approximate the remaining kilograms. Mr. Zundt testified that he had made 10 trips by bus carrying between 1/2 a

14

kilogram and 1 kilogram of cocaine, and had made four trips by car carrying between 1 and 2 kilograms of cocaine. He also testified that the amount of cocaine Mr. Casanova had him transporting had been increasing, and on this trip they expected to transport about 8 kilograms of cocaine total. The district court assumed that the 8 kilograms he was referring to was the cocaine recovered from Mr. Robledo. The district court then assumed the lowest weight possible for all of the various trips by bus and car. At 10 bus trips with a 1/2 kilogram each trip, Mr. Zundt transported approximately 5 kilograms of cocaine at the behest of Mr. Casanova. At four trips by car, carrying at least 1 kilogram of cocaine per trip, Mr. Zundt transported approximately 4 kilograms of cocaine by car. The 9 kilograms from those trips, combined with the 7.5 recovered kilograms of cocaine recovered, results in a total weight of at least 16.5 kilograms of cocaine. The methodology used by the district court in assuming the lowest weight for the bus and car trips was fair, accurate, and conservative. *See Zapata*, 139 F.3d at 1359. In addition, there were the 3 kilograms recovered from Mr. Robledo and the extra 3 to 4 kilograms that Mr. Casanova and Mr. Zundt were going to acquire on their last trip.

We note that the conspiracy Mr. Casanova was charged with began on or around January 1, 2014, and that Mr. Zundt testified that he believed that he had transported cocaine for Mr. Casanova prior to that date. This possibility did not

15

cause the district court to err. Mr. Zundt testified that he had only known Mr. Casanova for two years (or less) prior to the trial in July of 2015, and that he had worked for him as a handyman prior to transporting drugs for him. Assuming that Mr. Casanova and Mr. Zundt met on July 1, 2013, two years before trial, that was only five months prior to the start of the charged conspiracy. And during that time frame Mr. Casanova and Mr. Zundt were still engaging in the exact same conduct as what was charged in the conspiracy. We conclude that the district court did not err in including the weight of the cocaine from possible trips prior to the start date of January 1, 2014, due to the similarity, regularity, and temporal proximity of the crimes. *See United States v. Simpson*, 228 F.3d 1294, 1301-02 (11th Cir. 2000).

## IV

Mr. Casanova next challenges the district court's application of a 2-level increase to his base level offense for being in possession of a firearm in relation with a drug trafficking offense pursuant to U.S.S.G. § 2D1.1(b)(1). He argues that the firearm that was found at one of his storage units was not sufficiently related to him and the crime he was charged with. We disagree.

The application of an enhancement for possession a firearm is a factual determination which we review for clear error. *United States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006). "The enhancement for weapon possession reflects the

16

increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n.3). The government must show "by a preponderance of evidence that the firearm was present at the site of the charged conduct or prove that the defendant possessed a firearm during conduct associated with the offense of conviction." *Stallings*, 463 F.3d at 1220. The government must demonstrate that the firearm had some actual connection with the trafficking crime; it cannot be a mere accident or coincidence or simple possession. *See id.* at 1220–21. Once that burden is met, the defendant must establish that a connection between the weapon and the offense is clearly improbable. *See id.* at 1220.

The district court did not clearly err in finding that the 2-level enhancement applied to Mr. Casanova. Mr. Zundt testified that, after learning that Mr. Casanova had been arrested, he went back to one of the storage facilities and removed the firearm. He testified that he transported the firearm back to Texas in order to hide it. Mr. Zundt's actions as co-conspirator are attributable to Mr. Casanova. *See United States v. Fuentes*, 991 F.2d 700, 701 (11th Cir. 1993). In addition, Mr. Zundt also testified that the firearm was stored at a storage facility where he and Mr. Casanova had previously stored cocaine. The amount of cocaine, the number of trips, the presence of the firearm at a storage facility where cocaine had been

17

stored, and the attempted cover-up by Mr. Zundt permitted the district court to apply the enhancement.

## V

Mr. Casanova also appeals the 2-level enhancement he received for maintaining premises for the purpose of manufacturing or distributing a controlled substance. He argues that the district court erred in finding that his storage facilities were used primarily for the purposes of manufacturing or distributing a controlled substance. We are not convinced.

We review the district court's finding that Mr. Casanova maintained premises for the manufacture or distribution of drugs for clear error. *See United States v. Barrington*, 648 F.3d 1178, 1195 (11th Cir. 2011). The government was required to prove the enhancement by a preponderance of evidence. *See id.*

The district court did not clearly err when it found that the government had met its burden and applied the two-level enhancement for maintaining premises for the purpose of manufacturing or distributing a controlled substance pursuant to U.S.S.G. § 2D1.1(b)(12). The enhancement may be applied when the premise is a "building, room, or enclosure" used for "storage of a controlled substance for the purpose of distribution." § 2D1.1, comment. (n.17). Application Note 17 also indicates that the district court properly considered Mr. Casanova's possessory interest in the property and to what extent he controlled access and the activities on

18

the premises. *See id.* The manufacture and distribution of controlled substance does not need to be the sole use of the premises, but it must be a principal one as opposed to a collateral one. *See id.*

Mr. Zundt testified at trial and at the sentencing hearing about the numerous rental facilities that he and Mr. Casanova utilized when transporting the cocaine from Texas to Florida. Mr. Casanova had unlimited access to the facilities and controlled when the duo went there. The evidence presented at trial concerning the use of the units showed that they were only used to aid Mr. Zundt and Mr. Casanova when they were transporting cocaine. Mr. Casanova even prepared cocaine for distribution at one of the units in one instance. Drug distribution materials were also present in the facilities, and Mr. Zundt testified that the facilities in Fort Walton Beach were only used to store drugs. There was some evidence presented that one of the units contained the remnants of Mr. Casanova's stucco business, and a claim relating to the Deep Water Horizon oil spill, but those items did not demonstrate any recent use of the units for those purposes.

In sum, we conclude that there was sufficient evidence to sustain the enhancement for maintaining premises for the purpose of manufacturing or distributing a controlled substance.

## VI

Upon review of the record and consideration of the parties' briefs, we affirm Mr. Casanova's conviction and sentence.

**AFFIRMED**.